# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00255-CV

**Gary Romano, Appellant**

**v.**

**Gary Newton, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT
### NO. 24,929, HONORABLE TERRY L. FLENNIKEN, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Gary Romano appeals from the district court's post-answer default judgment awarding Gary Newton $176,150.68 in actual damages, $6,216.21 in attorney's fees, interest and costs, and its order overruling his motion for new trial. For the reasons we explain below, we affirm the district court's judgment conditioned on Newton's remittitur of a portion of the judgment that is not supported by the record.

The parties' underlying dispute concerns a written contract, a copy of which is attached to and incorporated into Newton's petition, under which Romano agreed to purchase from Newton an inventory of deli products, a customer list, and distribution rights within a designated area. The contract stated that the sales price was "Twenty Seven Thousand Dollars ($27,000)" for the customer list and distribution rights, plus "Seller's actual cost for inventory conveyed," which Newton alleged was $2,544.47, for a total of $29,544.47. Newton alleged that Romano "took

possession of the inventory, and the customer list pursuant to the sale [and] has exercised control over the distribution rights," including servicing of customers along the route and actually selling those rights to others," yet "has failed and refused to pay the purchase prices to [Newton]." Newton pled causes of action for breach of written contract, fraud, quantum merit, breach of oral contract, and sworn account. Regarding the sworn account claim, Newton verified that a total principal balance of $29,544.47, exclusive of interest, was due and payable by Romano to him, was within his personal knowledge, just and true, and that all just and lawful offsets, payments, and credits had been allowed. *See* Tex. R. Civ. P. 185.[1]

Romano, acting *pro se*, filed a general denial; he did not file a verified denial of Newton's sworn account claim nor assert affirmative defenses.[2] Newton, who was represented by counsel, obtained some discovery from Romano and later set the case for non-jury trial for the week of January 23, 2006. A pretrial conference was also set for January 12. Romano failed to appear at either the pretrial conference or trial. When the case was called for trial, Newton's counsel announced ready and introduced into evidence copies of two letters on his law office letterhead that were addressed from counsel to Romano: (1) a November 4, 2005, letter notifying Romano of the trial date and pretrial conference; and (2) a January 13, 2006, letter advising Romano that the pretrial conference had been held, conveying (per the judge's instructions) information regarding how the case would be called, and requesting a telephone number where Romano could be reached.

---

[1] Newton also attached and authenticated documentary proof of these amounts and his demand for payment.

[2] The record reflects that Romano had trial-level counsel for a time but that counsel withdrew in September 2005.

Each letter had been addressed to Romano at his address of record, the address where he had previously been served. Each reflected that it had been sent via certified mail, return receipt requested, citing a tracking number. With each letter, Newton also introduced the postmarked certified mail receipt, indicating prepayment of postage, and the signed "green card" acknowledging receipt by someone at Romano's address. The tracking number on each certified mail document matched the number stated on each corresponding letter. The green card with the November 2005 letter bore a postmark of November 7 and indicated receipt on the same date. The signature on the card is not clearly legible, and we cannot immediately discern the signer's identity from the record the district court had before it. However, the green card from the January letter, reflecting receipt at the same address on January 17, bears a signature of "Kathy Romano."

Immediately after introducing the letters and certified mail proof into evidence, Newton moved for a default judgment. The district court granted the motion. Newton's counsel advised that he would prepare a judgment for the court's approval, and the district court responded, "That concludes the hearing." Newton did not present other evidence. The district court subsequently signed a "Default Judgment" awarding Newton $176,150.68 "as the amount due in principal and interest on the principal amount to the date of judgment," plus court costs, $6,216.21 in attorney's fees, and post-judgment interest.

Romano filed a motion for a new trial, contending that he had inadequate notice of the trial setting, that he met the elements of *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939), and that the evidence was insufficient to support the judgment. He attached his affidavit testimony, wherein he also verified the factual allegations within his new trial motion.

3

Newton did not file a controverting affidavit. After a hearing at which no evidence was introduced, the district court overruled Romano's motion for new trial.[3]

Romano (now represented by counsel) brings three issues on appeal, contending that (1) the district court abused its discretion in overruling his new trial motion because the evidence established that he did not receive proper notice of the trial setting and, alternatively, met each factor of the *Craddock* test; (2) the pleadings and evidence were insufficient to support the judgment of $176,150.68 "as the amount due in principal and interest on the principal amount to the date of judgment"; and (3) the evidence was insufficient to support the attorney's fee award. We overrule Newton's first issue but conclude that the latter two are meritorious.

**Motion for new trial**

Trial courts have broad discretion in ruling on motions for new trial. *Limestone Constr., Inc. v. Summit Commercial Indus. Props., Inc.*, 143 S.W.3d 538, 542 (Tex. App.—Austin 2004, no pet.). We review a trial court's denial of a motion for new trial for an abuse of discretion. *Cliff v. Huggins*, 724 S.W.2d 778, 778-79 (Tex. 1987); *Limestone Constr., Inc.*, 143 S.W.3d at 542. In matters committed to a trial court's discretion, the test is whether the trial court acted arbitrarily or without reference to guiding legal principles. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). However, a trial court lacks discretion to incorrectly interpret and apply the law, and abuses its discretion in doing so. *In re DuPont De Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004).

---

[3] From the record, it appears that the Honorable John L. Placke, rather than Judge Flenniken, presided over this hearing.

4

A trial court abuses its discretion if it refuses to set aside a default judgment and grant a new trial where (1) the failure of the defendant to answer before judgment was not intentional or the result of conscious indifference, but due to a mistake or an accident; (2) the motion for a new trial sets up a meritorious defense; and (3) granting the motion for new trial will occasion no undue delay or otherwise injure the party taking the default judgment. *Craddock*, 133 S.W.2d at 126; *see also Cliff*, 724 S.W.2d at 779 (*Craddock* analysis applies to motions to set aside post-answer default judgments); *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966) (same).

Furthermore, a defendant who has appeared is entitled to notice of a trial setting as a matter of due process. *See LBL Oil Co. v. International Power Servs., Inc.*, 777 S.W.2d 390, 390-91 (Tex. 1989). A party who has been denied due process through lack of notice of a trial setting satisfies the first *Craddock* factor (as one cannot be consciously indifferent to a trial of which they are unaware), and, in such instances, the supreme court has also dispensed with the second (meritorious defense) factor for constitutional reasons. *Mathis v. Lockwood*, 166 S.W.3d 743, 744 (Tex. 2005); *Smith v. Holmes*, 53 S.W.3d 815, 817 (Tex. App.—Austin 2001, no pet.). This Court has previously held that a defendant who can establish lack of notice of a trial setting also need not establish the third *Craddock* factor, lack of prejudice to the plaintiff, *id.* at 818, but the supreme court more recently left open that question. *Mathis*, 166 S.W.3d at 744. We need not consider that issue here because Newton does not dispute that Romano satisfied the lack of prejudice element and our disposition is ultimately controlled by other elements.

Here, it is undisputed that Romano did receive notice of the trial setting before trial began—he admits receiving Newton's second letter concerning the upcoming trial on January 19.

5

This was the first trial setting, and rule of civil procedure 245 requires 45 days notice of an initial trial setting. Romano urges that in light of rule 245, proof that he did not receive *45* days notice of the first trial setting (even if he received *some* advance notice of it) would obviate his need to establish any of the *Craddock* factors. As Newton does not dispute that proposition and it is ultimately unnecessary for us to address it, we will assume the same.

As noted, Newton introduced evidence that he sent Romano a letter dated November 4, 2005, giving notice of the trial setting to Romano's address of record. Newton's evidence demonstrated compliance with rule of civil procedure 21a. This evidence that Newton sent the notice in compliance with rule 21a gives rise to a presumption that Romano duly received the notice. *Cliff*, 724 S.W.2d at 780. In the absence of evidence to the contrary, this presumption has the force of a rule of law. *Id.* The presumption that notice sent in compliance with rule 21a was received by the intended recipient is not evidence, however, and it "vanishes" when opposing evidence is introduced that the letter was not received. *Id.*

But Newton also introduced evidence that the November notice letter was *actually received* by someone at Romano's address—the returned, signed, certified mail "green card" dated November 7. *See Smith*, 53 S.W.3d at 818 (distinguishing between "the presumption that, because notice was mailed, [the opposing party] received it" arising from sending a notice in compliance with rule 21a versus inferences arising from proof that someone at the address actually received it); *cf. Limestone Constr., Inc.*, 143 S.W.3d at 545 (evidence that notice had been returned "unclaimed"). November 7 was over 80 days prior to the trial setting. Exactly who at that address received the letter is unclear from the record before the district court, but that address corresponded to

6

Romano's address of record, where Romano had been successfully served. Moreover, Newton had later mailed his January notice letter to this address, where "Kathy Romano" acknowledged receipt on January 17. Romano admits receiving that notice letter two days later, on January 19.

Romano contends that his affidavit and verified new trial motion establish that he never received Newton's November notice letter and that the first notice he received was Newton's second letter following the pretrial conference. In the relevant portions of his affidavit, Romano testified as follows:

> I received notice of a trial setting from counsel for Plaintiff on January 19th, 2006 for a setting during the week of January 23rd, 2006. I have been Pro Se in this litigation for several months and did not know the meaning of the notice, nor the result or consequence of not appearing before the Court during the week of January 23, 2006. At no time was I called to be at the courtroom on January 27th, 2006, the time at which the Court heard Plaintiff's case. Further, Plaintiff sent a personal letter to me on January 23rd advising of the January 27th trial date.[4] . . . .

> On January 23rd, 2006 I sent a correspondence to the Court advising that I had previously made travel plans to be out of town during the time in which the case was set. My correspondence, a true and correct copy of which is attached to the Motion for New Trial as Exhibit "D", provided my current phone number and address, but I was not contacted by the Court or Court personnel that I was to appear on the 27th of January, 2006 for a hearing on the merits. I did not have 45 days notice of the trial setting. I though[t] my letter to the Court of January 23rd, 2006 relieved me of any requirement to appear during the week of the 23rd of January.

---

[4] This letter, which is dated January 23, 2006, and addressed from Newton to Romano, is attached as an exhibit to Romano's motion for new trial. The letter states: "Dear Mr. Romano: The Court Coordinator stated the above case has been set for 9:00AM Friday January 27, 2006 at [the 335th District Court of Bastrop County, Texas]." The words "Received Jan 26" are handwritten on the letter.

In the first paragraph, Romano confirms that he received the January notice letter from Newton on January 19. In the second paragraph, Romano explains his response to that letter, addressing *Craddock*'s conscious indifference factor. Nowhere does he squarely address whether he did or did not receive prior notice of the trial setting except in the statement, found in the second paragraph, "I did not have 45 days notice of the trial setting." However, in his new trial motion, Romano does elaborate, "Defendant did not receive notice of the trial setting until January 19th when he received the letter from Plaintiff's counsel attached as Ex. C. [the January notice letter]." Romano verified the contents of his motion, testifying in his affidavit that "I have reviewed Defendant's Motion for New Trial and find the factual allegations therein true and correct."[5]

Romano urges that his assertions that he did not receive notice of the trial setting until January 19 are sufficient to rebut the rule 21a presumption that he received Newton's November notice letter. He adds that because Newton did not controvert this evidence with his own affidavit in opposition to Romano's new trial motion, the district court was required to take his assertions as true and grant him a new trial. *See Director, State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994) (if plaintiff does not controvert the defendant's affidavit in support of new trial motion, trial court must accept as true the affidavit's factual assertions regarding the *Craddock* elements).

---

[5] Newton urges that Romano's verification is impermissibly conclusory because he states that he "finds" the facts to be true and correct, rather than that the facts "are" true and correct. As Romano also testified that he had personal knowledge of the facts stated in his affidavit, we reject Newton's distinction as merely semantic.

In determining a motion for new trial under the *Craddock* standard, the trial court may look to all of the evidence in the record. *See Walker v. Gutierrez*, 111 S.W.3d 56, 64 (Tex. 2003) (in determining whether movant's factual assertions are controverted, court may consider all of the evidence in the record); *Evans*, 889 S.W.2d at 269 (same); *Katin Corp. v. Loesch*, No. 03-05-00412-CV, 2007 Tex. App. LEXIS 6352, at *12 (Tex. App.—Austin Aug. 10, 2007, no pet. h.) (mem. op.) (same). We may thus consider the evidence Newton introduced at trial regarding actual receipt of the notice. *See Smith*, 53 S.W.3d at 818.

In *Smith*, this Court recognized that mere proof that *someone* at a party's address of record received a notice intended for that party does not *alone* support the inference that the party actually received it. *Id.* at 818 (inmate's denial that he received notice "overcomes" any inferences from green card signed by someone at prison other than inmate; "[a]fter [inmate] denied that he received notice, appellees were required to do something more than show that someone at the prison's address had received the notice"). This case is distinguishable from *Smith* for two related reasons. First, while the signature on the green card accompanying the November notice letter cannot clearly be determined to have been Gary Romano's, it does not exclude that possibility, either.[6] Second, as *Smith* acknowledges, other surrounding facts may cause receipt by another person at the address to be probative of the party's actual receipt. *Id.* (citing *Elite Towing, Inc. v. LSI Fin. Group*, 985 S.W.2d 635, 642-43 (Tex. App.—Austin 1999, no pet.) (holding that notice to agent was notice to principal)).

---

[6] We disagree with Romano's assertions on appeal that "[t]he name signing for the card is clearly not Gary Romano."

We conclude that Newton's evidence was sufficient to enable the district court to infer, in light of surrounding facts, that Romano had personally signed for or otherwise received the November notice letter before the 45th day prior to trial. The address to which the letter was sent was the same one at which he had earlier been served, and the same one at which "Kathy Romano" later acknowledged receipt of the January notice letter that Romano admits he personally received. This address, the pleadings indicate, was Romano's home address. Romano does not dispute that *someone* at this address acknowledged receipt of the November letter. The signature on the green card is as consistent with it being Romano's signature as that of any other person there.

Our conclusion is further buttressed by Romano's own affidavit and new trial motion. In the face of evidence that someone at his address actually received the November notice, Romano is conspicuously silent regarding an explanation, offering only the bald assertions that "I did not have 45 days notice of the trial setting" and, "Defendant did not receive notice of the trial setting until January 19th when he received [the January notice letter]." In such a context, these statements are conclusory and, by omitting *any* mention of the signed green card and its implications, could further support the inference that Romano actually received notice. *See Katin Corp.*, 2007 Tex. App. LEXIS 6352, at *20-21 (explaining that while trial courts must take as true uncontroverted affidavit testimony regarding factual allegations concerning the *Craddock* factors, they may nonetheless draw "conflicting inferences" from those facts); *see also Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 82-83 (Tex. 1992) (conclusory allegations are insufficient to establish *Craddock* factors).

We conclude that the evidence Newton introduced at trial suffices to controvert Romano's factual assertions that he did not receive the November notice letter. Faced with

10

conflicting evidence, the district court would have been within its discretion to conclude that Romano had received Newton's November trial notice letter on or about November 7, and well in advance of the 45th day before trial. We likewise conclude, in light of this evidence, that the district court would not have abused its discretion in determining that Romano had failed to establish lack of conscious indifference. Although Romano presented evidence that he wrote a letter to the district court responding to the January trial notice, Romano offered no explanation for his inaction in the several weeks following the November notice. On this record, the district court did not abuse its discretion in overruling Romano's motion for new trial as to lack of notice and the *Craddock* equitable grounds.

**Sufficiency of the evidence**

By contrast, we sustain Romano's other challenges to the judgment in part because the evidence does not support either the $176,150.68 damages award or the attorney's fee award.

Unlike the situation with "no answer" default judgments, when a defendant answers but later fails to appear at trial, a default judgment cannot be taken based on the plaintiff's pleading allegations alone. *E.g., Karl & Kelly Co., Inc. v. McLerran*, 646 S.W.2d 174, 175 (Tex. 1983); *Stoner v. Thompson*, 578 S.W.2d 679, 682 (Tex. 1979). Once a defendant joins issue with a general denial, "A post-answer 'default' constitutes neither an abandonment of defendant's answer nor an implied confession of any issues thus joined by the defendant's answer." *Stoner*, 578 S.W.2d at 682. Consequently, "the plaintiff in such a case must offer evidence and prove his case as in a judgment upon a trial." *Id.*

11

Newton, as we have noted, did not introduce evidence beyond that relevant to Romano's notice of the trial setting. Instead, he followed a procedure resembling that invoked with "no answer" default judgments.[7] On appeal, Newton attempts to invoke the general appellate presumptions favoring the validity of trial court judgments, arguing that because Romano failed to request findings of fact and conclusions of law, we must imply all fact findings necessary to support the judgment. *See, e.g., Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003). However, where, as here, the appellate record includes the clerk's and reporter's record, even such implied findings of fact can be challenged for legal and factual sufficiency. *Id.* These presumptions, in any event, do not operate in the default judgment context. *McKenna v. Edgar*, 388 S.W.2d 927, 929 (Tex. 1965).

We have summarized the evidence at trial above. It consists solely of Newton introducing into evidence the two notice letters and accompanying certified mail documentation before requesting and obtaining judgment.[8] On this record, there is legally insufficient evidence to support judgment for Newton on his causes of action for breach of written or oral contract, fraud, and quantum meruit. There is likewise no evidence to support Newton's attorney's fee award. But because a verified suit on sworn account constitutes prima facie proof of liability for the amount owed and Romano did not properly deny the claim, Newton's pleadings were sufficient to support

---

[7] Such confusion is understandable amid Texas's often unclear case law regarding default judgments. *See generally Katin Corp. v. Loesch*, No. 03-05-00412-CV, 2007 Tex. App. LEXIS 6352 (Tex. App.—Austin Aug. 10, 2007, no pet. h.) (mem. op.) (navigating some of these issues).

[8] The clerk's record reflects that Romano's appellate counsel requested from the official court reporter, the record, if any, from the trial and hearing on motion for new trial. Only a brief record from the trial was prepared, and the parties concur that no evidence was presented at the new trial hearing. Nor does the court's docket sheet reflect any additional evidentiary hearings.

judgment as to that claim. *See* Tex. R. Civ. P. 185; *see also Nguyen v. Short, How, Frels & Heitz, P.C.*, 108 S.W.3d 558, 562 (Tex. App.—Dallas 2003, pet. denied); *Seisdata, Inc. v. Compagnie Generale de Geophysique*, 598 S.W.2d 690, 692 (Tex. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). The amount of Newton's sworn account, however, was only $29,544.47, and cannot support the full amount of the judgment's $176,150.68 award "as the amount due in principal and interest on the principal amount to the date of judgment."

An appellate court may suggest a remittitur on its own motion when an appellant complains that there is insufficient evidence to support an award and the appellate court agrees, but there is sufficient evidence to support a lesser award. *See* Tex. R. App. P. 46.3; *see also Springs Window Fashions Div. Inc. v. The Blind Maker, Inc.*, 184 S.W.3d 840, 889-90 (Tex. App.—Austin 2006, pet. granted, remand by agr.); *Comstock Silversmiths, Inc. v. Carey*, 894 S.W.2d 56, 57 (Tex. App.—San Antonio 1995, no writ); *David McDavid Pontiac, Inc. v. Nix*, 681 S.W.2d 831, 838-39 (Tex. App.—Dallas 1984, writ ref'd n.r.e.). The party prevailing in the trial court must be given the option of accepting the remittitur or having the case remanded for a new trial. *See Larson v. Cactus Util. Co.*, 730 S.W.2d 640, 641 (Tex. 1987). Accordingly, we suggest a remittitur of $146,606.21, the difference between the $176,150.68 awarded in the judgment and the $29,544.47 supported by the evidence.

**CONCLUSION**

We affirm the district court's judgment conditioned on the remittitur of $146,606.21. *See* Tex. R. App. P. 46.3. If Newton files a remittitur of $146,606.21 with the clerk of the district court within thirty days of this opinion and judgment and notifies this Court of such, we will reform

13

the district court's judgment and, as reformed, affirm. *See id.* Otherwise, we will reverse the district court's judgment and, as Romano prays, remand the cause to the district court for a new trial on unliquidated damages and attorney's fees.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed Conditioned on Remittitur

Filed:   September 6, 2007