# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00463-CV

**Noorani Gas & Convenience, Inc., a Texas Corporation;**
**HIB Enterprises, Inc., a Texas Corporation; Kareem Hassan, a/k/a Kareem Ali Hassan;**
**and Harish Bhagwanani, Individually, Appellants**

**v.**

**The State of Texas; The City of San Antonio, Texas;**
**and The Transit Authority of San Antonio, Texas, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
## NO. D-1-GV-03-004532, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a post-answer default judgment awarded in favor of appellees, the State of Texas, the City of San Antonio and the Transit Authority of San Antonio (collectively the "State") in a suit to recover delinquent taxes from appellants Noorani Gas & Convenience, Inc., HIB Enterprises, Inc., Kareem Hassan, a/k/a Kareem Ali Hassan, and Harish Bhagwanani. Appellants argue that (1) they have satisfied the requirements set forth in *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939), for setting aside a default judgment and are therefore entitled to a new trial; and (2) the evidence is legally and factually insufficient to support the judgment against them. For the reasons we explain below, we affirm the district court's judgment.

## BACKGROUND

Noorani Gas & Convenience, Inc., owned and operated a convenience store in San Antonio, Texas. In a 2002 audit, the comptroller determined that Noorani owed $328,663.17 in unpaid taxes on the convenience store's sales from August 1, 1998, through April 30, 2002. The auditor presented the audit results to a Noorani representative at an exit conference on December 3, 2002. Thirty-eight days later, on January 10, 2003, Noorani sold the convenience store to HIB Enterprises, Inc., for $25,000. HIB continued to conduct the business under the same name, at the same location, using the same telephone number.

On November 7, 2003, the State filed an original petition seeking to recover the delinquent taxes plus penalties, interest and attorney's fees, from (1) Noorani, on the basis of the audit; (2) Noorani's president, Kareem Hassan, as a responsible party under section 111.016(b) of the tax code; (3) HIB Enterprises, as a legal successor under section 111.020(a) of the tax code and as a continuing business enterprise of Noorani; and (4) HIB's president, Harish Bhagwanani, under a corporate veil-piercing theory. The State also sought a permanent injunction to "enjoin[] Defendants, their agents, employees and servants, from continuing in the business of making taxable sales in the State of Texas . . . until all the taxes, penalties and interest owed to Plaintiffs are paid."

Attorney Michael Clay filed a general denial on behalf of all of the defendants on December 8, 2003. The record reflects that Clay continued to represent the defendants through the discovery phase of the lawsuit, at one point entering into a rule 11 agreement with the State to extend discovery deadlines, and eventually agreeing to present his clients for depositions that were to take place on December 9, 2005. On December 9, the day the depositions were scheduled to take place,

2

Clay faxed a letter to the assistant attorney general representing the State requesting to reschedule the depositions "in light of the weather." When Clay and the defendants did not appear for the depositions, the State filed a motion for discovery sanctions. At the sanctions hearing, held January 5, 2006, the district court entered an agreed order requiring the defendants, within ten days of the date of the order, to provide the State with dates within the month of February 2006 that the defendants would be available to give their depositions, to appear for the depositions on the February 2006 date selected by the State, and to bring with them the documents requested with the deposition notice. The court further ordered the defendants to pay the State $500 "as reasonable expenses for the necessity of bringing the [motion]."

Two months later, on March 9, 2006, the State filed a second motion for discovery sanctions complaining that the defendants had not complied with the agreed order and requesting that the court impose "death penalty" sanctions pursuant to Texas Rule of Civil Procedure 215.2(b)(4). The State's motion contained notice that a hearing on the second motion for discovery sanctions had been scheduled for March 23, 2006, and included a certificate of service wherein the assistant attorney general representing the State certified that a copy of the motion had been sent to the defendants through "their attorney of record, Michael D. Clay" on March 8, 2006, by certified mail, return receipt requested. After neither Clay nor the defendants appeared for the March 23 hearing, the district court entered an order imposing death penalty sanctions. Specifically, the court ordered that: (1) Noorani "may not oppose" the State's claim that it "is liable for the sales tax in the amounts shown by the Comptroller certificates attached to the [State's] petition"; (2) Hassan "may not oppose" the State's claim that "he is liable as a responsible individual pursuant to Tex. Tax

3

Code Ann. § 111.016(b) with regard to the sales tax for the periods referenced in the Comptroller certificates . . . in whatever amount is established at trial"; (3) HIB "may not oppose" the State's claims that it "acquired the [convenience store] business . . . subsequent to the liability periods shown by the comptroller certificates . . . for consideration in excess of the amounts shown in the certificates"; (4) HIB "may not oppose" the State's claims that it "acquired assets from Noorani Gas & Convenience, Inc. through a fraudulent transfer or sham transaction as defined in Tex. Tax Code Ann. § 111.024(b)"; and (5) Bhagwanani and Hassan "may not oppose" the State's claims that "the business of HIB Enterprises, Inc. is in substance that of said individual defendants doing business as a partnership."

On March 24, 2006, the State sent notice to Clay that a non-jury trial was set for May 16, 2006. When the case was called for trial on May 16, the defendants did not appear. To prove that the defendants were given notice of the trial setting, the State introduced a copy of the notice of trial filed for record and a copy of a cover letter addressed to Clay stating: "Enclosed please find Plaintiff's Notice of Trial, filed in the record . . . . Please be advised that there is a non jury setting . . . scheduled for **2:00 p.m., Tuesday, May 16, 2006.**" The letter was addressed to Clay's address of record and reflected that it had been sent via certified mail, return receipt requested, citing a tracking number. Along with the letter, the State also introduced a copy of the signed mail receipt or "green card" indicating receipt by "Michael Clay" on March 29, 2006. The green card contained the same tracking number as the letter.

To prove liability, the State introduced the comptroller's certificate of delinquency, reflecting that, for delinquent taxes, penalties and interest calculated through May 16, 2006, Noorani

4

Gas & Convenience, Inc., owed $453,567.45 to the State, $75,332.97 to the City of San Antonio, and $36,300.77 to the San Antonio Transit Authority. The State also introduced Hassan's and Bhagwanani's responses to requests for admissions. In them, Hassan admitted that he was an officer of Noorani Gas & Convenience, Inc., during the liability period and that he owns the majority interest in Noorani's stock. Bhagwanani admitted (1) that he is an officer of HIB Enterprises; (2) that he owns the controlling interest in the shares HIB's stock; (3) that he is in charge of the company's financial affairs; (4) that HIB acquired Noorani's business, including the business's furniture, fixture, equipment, inventory and accounts; and (5) that HIB continues in the same business previously conducted by Noorani and conducts the business under the same name, at the same location, using the same telephone number. The State also introduced a copy of the audit and offered the testimony of the auditor, Quincy Fuller, who explained that, because Noorani did not provide him with any records, he performed the audit using a sample of the store's vendor purchases.

Finally, to prove attorney's fees, the State offered the affidavit of the assistant attorney general who represented the State, David Randell. Mr. Randell testified that he spent a total of 24 hours working on the case and that a reasonable attorney's fee for a case of this nature would be $200 per hour. He also testified the Office of the Attorney General's legal assistants spent 27 hours performing general administrative duties related to the case and that a reasonable fee for their services is $75.00 per hour. Adding the 24 hours that he spent on the case at a rate of $200 per hour to the 27 hours that the legal assistants spent on the case at a rate of $75.00 per hour, Mr. Randell opined that $6,825.00 would be a reasonable amount of attorney's fees for the case.

5

The district court rendered a judgment holding the defendants jointly and severally liable for $453,567.45 in sales tax, penalties, interest, and $7,825.00 in attorney's fees owed to the State, $75,332.97 in sales taxes, penalties, and interest owed to the City of San Antonio, and $36,300.77 in sales taxes, penalties and interest owed to the Transit Authority of San Antonio. The court also issued a permanent injunction enjoining the defendants "from continuing in the business of making taxable sales in the State of Texas . . . until all tax, penalties, and interest adjudged to be due are paid." On June 15, 2006, Mr. Clay filed a motion for new trial on behalf of all the defendants, which was later overruled by operation of law. This appeal followed.

## DISCUSSION

On appeal, the defendants assert that (1) the district court erred in overruling their motion for new trial because they met the *Craddock* factors for setting aside the default judgments and (2) the evidence presented at trial was insufficient to support the district court's judgment.

**Motion for new trial**

Trial courts have broad discretion in ruling on motions for new trial. *Limestone Constr. v. Summit Commercial Indus. Props*., 143 S.W.3d 538, 542 (Tex. App.—Austin 2004, no pet.). We review a trial court's denial of a motion for new trial for an abuse of discretion. *Id*. at 542. The test for abuse of discretion is whether the trial court acted arbitrarily or without reference to guiding legal principles. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). A trial court abuses its discretion if it misinterprets or misapplies the law. *In re DuPont De Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004).

6

A trial court abuses its discretion if it refuses to set aside a default judgment and grant a new trial where (1) the defendant's failure to answer or appear was not intentional or the result of conscious indifference, but due to a mistake or accident; (2) the motion for new trial sets up a meritorious defense; and (3) granting a motion for new trial will not cause undue delay or otherwise injure the party taking the default judgment. *Craddock*, 133 S.W.2d at 126; *see also Cliff v. Huggins*, 724 S.W.2d 778, 779 (Tex. 1987) (*Craddock* analysis applies to motions to set aside post-answer default judgments); *Ivy v. Carrell*, 407 S.W.2d 212, 214 (Tex. 1966) (same).[1]

Here, the defendants filed an unsworn motion for new trial in which they correctly recited all of the *Craddock* elements—i.e. that their failure to appear was not intentional, that they have a meritorious defense, and that their request would not cause delay or injury to the nonmovants. However, they have not alleged any facts, verified these facts, or attached any evidence to support their assertions. A motion for new trial "*must allege facts* which in law would constitute a defense to the cause of action asserted by the plaintiff, and *must be supported by affidavits or other evidence* proving prima facie that the defendant has such meritorious defense." *Ivy*, 407 S.W.2d at 214 (emphases added). Since the defendants did not allege any facts that would constitute a meritorious defense or attach any evidence to support such a defense, nor did they assert any facts or attach any

_____

[1] Although the statement of facts in HIB's and Bhagwanani's brief on appeal states that "Mr. Bhagwanani disputes any notice or knowledge of this suit until after the default judgment was taken," none of the defendants raise lack of service in their arguments on appeal. In any event, we note that Mr. Clay filed an answer on behalf of all of the defendants on December 8, 2003, making service of citation unnecessary. *See* Tex. R. Civ. P. 121. The filing of an answer or some other appearance generally waives any defect in the service of citation. *See Baker v. Monsanto Co.*, 111 S.W.3d 158, 160 (Tex. 2003) (per curiam).

7

evidence to explain why their failure to appear was not intentional or the result of conscious indifference, the district court did not abuse its discretion in overruling their motion for new trial. We overrule the appellants' first issue.

**Sufficiency of the evidence**

A trial court may not render a post-answer default judgment based solely on the plaintiff's pleadings: when a defendant has filed an answer but fails to appear for trial, the plaintiff is still required to offer evidence and prove all aspects of his case. *Bradley Motors v. Mackey*, 878 S.W.2d 140, 141 (Tex. 1994). All four defendants contend that the evidence is legally and factually insufficient evidence to support the district court's post-answer default judgment against them. Specifically, they argue that the auditor, Fuller, was not qualified to give an opinion concerning the defendants' tax liability and that the figures used to calculate tax liability in the audit were inaccurate. HIB and Harish Bhagwanani further assert that the district court erred in holding them jointly and severally liable for the full amount of tax, penalty and interest, because (1) there was no evidence that either HIB or Bhgwanani are the alter ego of Noorani and (2) HIB and Bhgwanani's liability, if any, as a successor under section 111.020 of the tax code is limited to $25,000—the purchase price of the convenience store.

We may sustain a legal sufficiency challenge only if the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810

(Tex. 2005) (quoting Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 362-63 (1960)). In determining whether a finding is supported by legally sufficient evidence, we view the evidence in the light most favorable to the finding, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Id.* at 807. We indulge every reasonable inference that would support the finding. *Id*. at 822.

In reviewing the factual sufficiency of the evidence, we consider and weigh all the evidence presented at trial, including any evidence contrary to the judgment. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We set aside a finding for factual insufficiency if it is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain*, 709 S.W.2d at 176.

### *Noorani*

We conclude that the evidence is legally and factually sufficient to support the judgment against Defendant Noorani Gas & Convenience, Inc. Section 111.013 of the tax code provides that a comptroller's certificate of delinquency "is prima facie evidence" of:

(1) the stated tax or amount of the tax, after all just and lawful offsets, payments, and credits have been allowed;

(2) the stated amount of penalties and interest;

(3) the delinquency of the amounts; and

(4) the compliance of the comptroller with the applicable provisions of [the tax] code in computing and determining the amount due.

9

Tex. Tax Code Ann. § 111.013(a) (West 2002).

Here, the comptroller's certificate of delinquency showing the amount of tax Noorani owed was attached to the State's original and amended petitions and introduced into evidence at the hearing on the default judgment. The State thereby established a prima facie case for collection of the delinquent taxes from Noorani. *See id.* Furthermore, we note that Noorani filed only an unsworn general denial in response to the claims against it. Section 111.013 of the tax code provides that a "defendant may not deny a claim for taxes, penalties or interest unless the defendant timely files a sworn written denial that specifically identifies the taxes, penalties, and interest that are not due." Tex. Tax Code Ann. § 111.013(b) (West 2002). Noorani's failure to file a sworn written denial is fatal to his defense and for that reason alone, the judgment against him is affirmed. *See id.*; *see also Schwarz v. State*, No. 03-00-00586-CV, 2001 Tex. App. LEXIS 3585 (Tex. App.—Austin May 31, 2001, no pet.) (not designated for publication). We overrule Noorani's legal and factual sufficiency issue.

### Kareem Hassan

We likewise conclude that the evidence is legally and factually sufficient to support the judgment rendered against Noorani's president, Kareem Hassan. Section 111.016(b) of the tax code provides that:

> an individual who controls or supervises the collection of tax or money from another person, or an individual who controls or supervises the accounting for and paying over of the tax or money, and who wilfully fails to pay or cause to be paid the tax or money is liable **as a responsible individual** for an amount equal to the tax or money not paid or caused to be paid.

Tex. Tax Code Ann. 111.016(b) (West 2002) (emphasis added). "Responsible individual" is

defined to

> includ[e] an officer, manager, director, or employee of a corporation, association, or limited liability company or a member of a partnership who, as an officer, manager, director, employee, or member, is under a duty to perform an act with respect to the collection, accounting, or payment of a tax or money subject to the provisions of Subsection (a) [of section 111.016].

Tex. Tax Code Ann. 111.016(d)(1) (West 2002).

In his response to request for admissions, Hassan admitted that he was an officer of

Noorani Gas & Convenience, Inc. during the liability period and that he owns the majority interest

in Noorani's stock. Hassan signed the audit's questionnaire as the corporation's president, and

represented himself to be the corporation's president during the course of the audit. We conclude

that there is legally and factually sufficient evidence that Hassan is liable for the full amount of

the judgment as a "responsible individual" under section 111.016(b) of the tax code. *See* Tex. Tax

Code Ann. § 111.016(b), (d)(1); *Ghashim v. State*, 104 S.W.3d 184, 187 (Tex. App.—Austin 2003,

no pet.). We overrule Hassan's legal and factual sufficiency issue.

### *HIB Enterprises*

Similarly, we conclude that there is legally and factually sufficient evidence to

support the judgment against HIB Enterprises. The State sued HIB alleging that it is obligated to pay

the tax liability of Noorani as a legal successor to and or purchaser of the convenience store business

under section 111.020 of the tax code. Section 111.020 of the tax code provides that when a person

with unpaid tax debt sells or quits his business "the successor to the seller or the seller's assignee

11

shall withhold an amount of the purchase price sufficient to pay the amount due until the seller provides a receipt from the comptroller showing that the amount has been paid or a certificate stating that no amount is due." Tex. Tax Code Ann. § 111.020(a) (West 2002). A purchaser who fails to withhold the tax amount due "is liable for the amount required to be withheld to the extent of the value of the purchase price." *Id.* § 111.020(b) (West 2002). HIB argues that its liability under section 111.020(b) is limited to the value of the purchase price, which, according to the bill of sale contained in the record, was $25,000. HIB, however, overlooks the district court's sanctions ordering that HIB "may not oppose" the State's claims that it "acquired the [convenience store] business . . . subsequent to the liability periods shown by the comptroller certificates . . . for consideration in excess of the amounts shown in the certificates." HIB has not challenged the district court's sanctions on appeal. We therefore must affirm the district court's judgment holding HIB jointly and severally liable for the full amount of the tax liability, including the amount in excess of the purchase price of the convenience store. We overrule HIB's legal and factual sufficiency issues.

### *Harish Bhagwanani*

Finally, we conclude that the evidence is legally and factually sufficient to support the individual liability of HIB's president, Harish Bhagwanani. The State asserted liability as to Bhagwanani individually based on a veil-piercing theory. The court will "pierce the corporate veil" or disregard the corporate fiction, and hold an individual shareholder liable "when the corporate form has been used as part of a basically unfair device to achieve an inequitable result." *Castleberry v. Branscum*, 721 S.W.2d 270, 271 (Tex. 1986). Among other situations, courts will pierce the corporate veil when the corporation is used as a means of perpetrating fraud or when the corporate

12

fiction is resorted to as a means of evading an existing legal obligation. *Id.* at 272. Courts have consistently pierced the corporate veil when an indebted corporation transfers assets to another corporation to avoid a judgment or debt. *See Love v. State*, 972 S.W.2d 114, 120 (Tex. App.—Austin 1998, no pet.) (former corporate directors individually liable for penalties assessed against corporation when they transferred indebted corporations assets to another company that they controlled in order to avoid paying penalties); *Klein v. Sporting Goods, Inc.*, 772 S.W.2d 173, 176 (Tex. App.—Houston [14th Dist.] 1989, writ denied) (corporate shareholder liable for corporation's debts when he incorporated new company to avoid foreclosed corporation's creditors).

In determining whether to pierce the corporate veil and hold Bhagwanani individually liable, the district court could have considered the factors found in Section 111.024 of the tax code. Section 111.024 provides that "[a] person who acquires a business or the assets of a business from a taxpayer through a fraudulent transfer or a sham transaction is liable for any tax, penalty, and interest owed by the taxpayer." Tex. Tax Code Ann. § 111.024(a) (West 2002). Under this section, a transfer of a business or the assets of a business is considered to be a fraudulent transfer or a sham transaction if the taxpayer made the transfer "with intent to evade, hinder, delay, or prevent the collection of any tax, penalty, or interest owed by the taxpayer." *Id*. § 111.024(b). Among the factors that a fact-finder may consider in determining the taxpayer's intent, are whether "the taxpayer's business and the transferee's business are essentially operated as a single business entity at the same location," *id.* § 111.024(c)(4), and whether "before the transfer or the transaction occurred, the taxpayer had either been subjected to or apprised of impending collection action by the comptroller or by the attorney general." *Id*. § 111.024(c)(5).

13

Here, Bhagwanani admitted that HIB continues in the same business previously conducted by Noorani and conducts the business under the same name, at the same location, using the same telephone number. Furthermore, the record reflects that Noorani sold the business to HIB thirty-eight days after it was presented with the audit results. Bhagwanani admitted that he owns the controlling interest of HIB's stock and is in control of the company's financial affairs and the record reflects that Bhagwanani signed the bill of sale as HIB's president. We conclude that there is legally and factually sufficient evidence to support a finding that Bhagwanani used his corporate form, HIB, as a sham to perpetuate a fraud—i.e. to avoid the payment of taxes. Accordingly, we overrule Bhagwanani's legal and factual sufficiency issue.[2]

## CONCLUSION

Because the appellants did not satisfy the *Craddock* requirements entitling them to have the default judgment against them set aside, we conclude that the district court did not abuse its discretion in overruling their motion for new trial. Furthermore we conclude that there is legally

---

[2] Bhagwanani and HIB also complain that there was no evidence to support the district court's injunction prohibiting them from continuing in the business of making taxable sales in the State of Texas. Section 111.011(a) of the tax code allows the State to bring suit to enjoin taxpayers who fail or refuse to remit taxes that are due from their business from continuing in that business until the taxes due are paid. *See* Tex. Tax Code Ann. § 111.011(a) (West 2002). Because there is sufficient evidence that HIB and Bhagwanani are liable for the taxes sought, the district court did not err in issuing the injunction.

14

and factually sufficient evidence to support the judgment against all of the appellants.  Accordingly we affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   April 24, 2008

15