TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00463-CV






Noorani Gas & Convenience, Inc., a Texas Corporation;

HIB Enterprises, Inc., a Texas Corporation; Kareem Hassan, a/k/a Kareem Ali Hassan;

and Harish Bhagwanani, Individually, Appellants

v.


The State of Texas; The City of San Antonio, Texas;

and The Transit Authority of San Antonio, Texas, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT

NO. D-1-GV-03-004532, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 This is an appeal from a post-answer default judgment awarded in favor of appellees,
the State of Texas, the City of San Antonio and the Transit Authority of San Antonio (collectively
the "State") in a suit to recover delinquent taxes from appellants Noorani Gas & Convenience, Inc.,
HIB Enterprises, Inc., Kareem Hassan, a/k/a Kareem Ali Hassan, and Harish Bhagwanani. 
Appellants argue that (1) they have satisfied the requirements set forth in Craddock v. Sunshine Bus
Lines, Inc., 133 S.W.2d 124, 126 (Tex. 1939), for setting aside a default judgment and are therefore
entitled to a new trial; and (2) the evidence is legally and factually insufficient to support the
judgment against them. For the reasons we explain below, we affirm the district court's judgment.




BACKGROUND

 Noorani Gas & Convenience, Inc., owned and operated a convenience store in
San Antonio, Texas. In a 2002 audit, the comptroller determined that Noorani owed $328,663.17
in unpaid taxes on the convenience store's sales from August 1, 1998, through April 30, 2002. 
The auditor presented the audit results to a Noorani representative at an exit conference on December
3, 2002. Thirty-eight days later, on January 10, 2003, Noorani sold the convenience store to HIB
Enterprises, Inc., for $25,000. HIB continued to conduct the business under the same name, at the
same location, using the same telephone number.

 On November 7, 2003, the State filed an original petition seeking to recover the
delinquent taxes plus penalties, interest and attorney's fees, from (1) Noorani, on the basis of the
audit; (2) Noorani's president, Kareem Hassan, as a responsible party under section 111.016(b) of
the tax code; (3) HIB Enterprises, as a legal successor under section 111.020(a) of the tax code and
as a continuing business enterprise of Noorani; and (4) HIB's president, Harish Bhagwanani, under
a corporate veil-piercing theory. The State also sought a permanent injunction to "enjoin[]
Defendants, their agents, employees and servants, from continuing in the business of making taxable
sales in the State of Texas . . . until all the taxes, penalties and interest owed to Plaintiffs are paid."

 Attorney Michael Clay filed a general denial on behalf of all of the defendants on
December 8, 2003. The record reflects that Clay continued to represent the defendants through the
discovery phase of the lawsuit, at one point entering into a rule 11 agreement with the State to extend
discovery deadlines, and eventually agreeing to present his clients for depositions that were to take
place on December 9, 2005. On December 9, the day the depositions were scheduled to take place,
Clay faxed a letter to the assistant attorney general representing the State requesting to reschedule
the depositions "in light of the weather." When Clay and the defendants did not appear for the
depositions, the State filed a motion for discovery sanctions. At the sanctions hearing, held January
5, 2006, the district court entered an agreed order requiring the defendants, within ten days of the
date of the order, to provide the State with dates within the month of February 2006 that the
defendants would be available to give their depositions, to appear for the depositions on the February
2006 date selected by the State, and to bring with them the documents requested with the deposition
notice. The court further ordered the defendants to pay the State $500 "as reasonable expenses for
the necessity of bringing the [motion]."

 Two months later, on March 9, 2006, the State filed a second motion for discovery
sanctions complaining that the defendants had not complied with the agreed order and requesting
that the court impose "death penalty" sanctions pursuant to Texas Rule of Civil Procedure
215.2(b)(4). The State's motion contained notice that a hearing on the second motion for discovery
sanctions had been scheduled for March 23, 2006, and included a certificate of service wherein the
assistant attorney general representing the State certified that a copy of the motion had been sent to
the defendants through "their attorney of record, Michael D. Clay" on March 8, 2006, by certified
mail, return receipt requested. After neither Clay nor the defendants appeared for the March 23
hearing, the district court entered an order imposing death penalty sanctions. Specifically, the court
ordered that: (1) Noorani "may not oppose" the State's claim that it "is liable for the sales tax in
the amounts shown by the Comptroller certificates attached to the [State's] petition"; (2) Hassan
"may not oppose" the State's claim that "he is liable as a responsible individual pursuant to Tex. Tax
Code Ann. § 111.016(b) with regard to the sales tax for the periods referenced in the Comptroller
certificates . . . in whatever amount is established at trial"; (3) HIB "may not oppose" the
State's claims that it "acquired the [convenience store] business . . . subsequent to the liability
periods shown by the comptroller certificates . . . for consideration in excess of the amounts shown
in the certificates"; (4) HIB "may not oppose" the State's claims that it "acquired assets from
Noorani Gas & Convenience, Inc. through a fraudulent transfer or sham transaction as defined in
Tex. Tax Code Ann. § 111.024(b)"; and (5) Bhagwanani and Hassan "may not oppose" the State's
claims that "the business of HIB Enterprises, Inc. is in substance that of said individual defendants
doing business as a partnership."

 On March 24, 2006, the State sent notice to Clay that a non-jury trial was set for May
16, 2006. When the case was called for trial on May 16, the defendants did not appear. To prove
that the defendants were given notice of the trial setting, the State introduced a copy of the notice
of trial filed for record and a copy of a cover letter addressed to Clay stating: "Enclosed please find
Plaintiff's Notice of Trial, filed in the record . . . . Please be advised that there is a non jury setting
. . . scheduled for 2:00 p.m., Tuesday, May 16, 2006." The letter was addressed to Clay's address
of record and reflected that it had been sent via certified mail, return receipt requested, citing a
tracking number. Along with the letter, the State also introduced a copy of the signed mail receipt 
or "green card" indicating receipt by "Michael Clay" on March 29, 2006. The green card contained
the same tracking number as the letter.

 To prove liability, the State introduced the comptroller's certificate of delinquency,
reflecting that, for delinquent taxes, penalties and interest calculated through May 16, 2006, Noorani
Gas & Convenience, Inc., owed $453,567.45 to the State, $75,332.97 to the City of San Antonio,
and $36,300.77 to the San Antonio Transit Authority. The State also introduced Hassan's and
Bhagwanani's responses to requests for admissions. In them, Hassan admitted that he was an officer
of Noorani Gas & Convenience, Inc., during the liability period and that he owns the majority
interest in Noorani's stock. Bhagwanani admitted (1) that he is an officer of HIB Enterprises;
(2) that he owns the controlling interest in the shares HIB's stock; (3) that he is in charge of the
company's financial affairs; (4) that HIB acquired Noorani's business, including the business's
furniture, fixture, equipment, inventory and accounts; and (5) that HIB continues in the same
business previously conducted by Noorani and conducts the business under the same name, at the
same location, using the same telephone number. The State also introduced a copy of the audit and
offered the testimony of the auditor, Quincy Fuller, who explained that, because Noorani did not
provide him with any records, he performed the audit using a sample of the store's vendor purchases.

 Finally, to prove attorney's fees, the State offered the affidavit of the assistant
attorney general who represented the State, David Randell. Mr. Randell testified that he spent a total
of 24 hours working on the case and that a reasonable attorney's fee for a case of this nature would
be $200 per hour. He also testified the Office of the Attorney General's legal assistants spent 27
hours performing general administrative duties related to the case and that a reasonable fee for their
services is $75.00 per hour. Adding the 24 hours that he spent on the case at a rate of $200 per hour
to the 27 hours that the legal assistants spent on the case at a rate of $75.00 per hour, Mr. Randell
opined that $6,825.00 would be a reasonable amount of attorney's fees for the case.

 The district court rendered a judgment holding the defendants jointly and severally
liable for $453,567.45 in sales tax, penalties, interest, and $7,825.00 in attorney's fees owed to the
State, $75,332.97 in sales taxes, penalties, and interest owed to the City of San Antonio, and
$36,300.77 in sales taxes, penalties and interest owed to the Transit Authority of San Antonio. The
court also issued a permanent injunction enjoining the defendants "from continuing in the business
of making taxable sales in the State of Texas . . . until all tax, penalties, and interest adjudged to be
due are paid." On June 15, 2006, Mr. Clay filed a motion for new trial on behalf of all the
defendants, which was later overruled by operation of law. This appeal followed.


DISCUSSION On appeal, the defendants assert that (1) the district court erred in overruling their
motion for new trial because they met the Craddock factors for setting aside the default judgments
and (2) the evidence presented at trial was insufficient to support the district court's judgment.


Motion for new trial

 Trial courts have broad discretion in ruling on motions for new trial. Limestone
Constr. v. Summit Commercial Indus. Props., 143 S.W.3d 538, 542 (Tex. App.--Austin 2004,
no pet.). We review a trial court's denial of a motion for new trial for an abuse of discretion. Id.
at 542. The test for abuse of discretion is whether the trial court acted arbitrarily or without reference
to guiding legal principles. Cire v. Cummings, 134 S.W.3d 835, 838 (Tex. 2004). A trial court
abuses its discretion if it misinterprets or misapplies the law. In re DuPont De Nemours & Co.,
136 S.W.3d 218, 223 (Tex. 2004).

 A trial court abuses its discretion if it refuses to set aside a default judgment and grant
a new trial where (1) the defendant's failure to answer or appear was not intentional or the result of
conscious indifference, but due to a mistake or accident; (2) the motion for new trial sets up
a meritorious defense; and (3) granting a motion for new trial will not cause undue delay
or otherwise injure the party taking the default judgment. Craddock, 133 S.W.2d at 126; see also
Cliff v. Huggins, 724 S.W.2d 778, 779 (Tex. 1987) (Craddock analysis applies to motions to set
aside post-answer default judgments); Ivy v. Carrell, 407 S.W.2d 212, 214 (Tex. 1966) (same). (1)

 Here, the defendants filed an unsworn motion for new trial in which they correctly
recited all of the Craddock elements--i.e. that their failure to appear was not intentional, that they
have a meritorious defense, and that their request would not cause delay or injury to the nonmovants. 
However, they have not alleged any facts, verified these facts, or attached any evidence to support
their assertions. A motion for new trial "must allege facts which in law would constitute a defense
to the cause of action asserted by the plaintiff, and must be supported by affidavits or other evidence
proving prima facie that the defendant has such meritorious defense." Ivy, 407 S.W.2d at 214
(emphases added). Since the defendants did not allege any facts that would constitute a meritorious
defense or attach any evidence to support such a defense, nor did they assert any facts or attach any
evidence to explain why their failure to appear was not intentional or the result of conscious
indifference, the district court did not abuse its discretion in overruling their motion for new trial. 
We overrule the appellants' first issue.


Sufficiency of the evidence

 A trial court may not render a post-answer default judgment based solely on the
plaintiff's pleadings: when a defendant has filed an answer but fails to appear for trial, the plaintiff
is still required to offer evidence and prove all aspects of his case. Bradley Motors v. Mackey,
878 S.W.2d 140, 141 (Tex. 1994). All four defendants contend that the evidence is legally and
factually insufficient evidence to support the district court's post-answer default judgment against
them. Specifically, they argue that the auditor, Fuller, was not qualified to give an opinion
concerning the defendants' tax liability and that the figures used to calculate tax liability in the audit
were inaccurate. HIB and Harish Bhagwanani further assert that the district court erred in holding
them jointly and severally liable for the full amount of tax, penalty and interest, because (1) there
was no evidence that either HIB or Bhgwanani are the alter ego of Noorani and (2) HIB and
Bhgwanani's liability, if any, as a successor under section 111.020 of the tax code is limited to
$25,000--the purchase price of the convenience store.

 We may sustain a legal sufficiency challenge only if the record discloses one of the
following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact;
(c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence
establishes conclusively the opposite of the vital fact. City of Keller v. Wilson, 168 S.W.3d 802, 810
(Tex. 2005) (quoting Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error,
38 Tex. L. Rev. 361, 362-63 (1960)). In determining whether a finding is supported by legally
sufficient evidence, we view the evidence in the light most favorable to the finding, "crediting
favorable evidence if reasonable jurors could, and disregarding contrary evidence unless
reasonable jurors could not." Id. at 807. We indulge every reasonable inference that would support
the finding. Id. at 822.

 In reviewing the factual sufficiency of the evidence, we consider and weigh all
the evidence presented at trial, including any evidence contrary to the judgment. Plas-Tex, Inc.
v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989); Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986). We set aside a finding for factual insufficiency if it is "so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust." Cain, 709 S.W.2d at 176.


 Noorani

 We conclude that the evidence is legally and factually sufficient to support the 
judgment against Defendant Noorani Gas & Convenience, Inc. Section 111.013 of the tax code
provides that a comptroller's certificate of delinquency "is prima facie evidence" of:


 (1) the stated tax or amount of the tax, after all just and lawful offsets, payments, and
credits have been allowed;


 (2) the stated amount of penalties and interest;


 (3) the delinquency of the amounts; and


 (4) the compliance of the comptroller with the applicable provisions of [the tax]
code in computing and determining the amount due.



Tex. Tax Code Ann. § 111.013(a) (West 2002).

 Here, the comptroller's certificate of delinquency showing the amount of tax Noorani
owed was attached to the State's original and amended petitions and introduced into evidence at the
hearing on the default judgment. The State thereby established a prima facie case for collection of
the delinquent taxes from Noorani. See id. Furthermore, we note that Noorani filed only an unsworn
general denial in response to the claims against it. Section 111.013 of the tax code provides that a
"defendant may not deny a claim for taxes, penalties or interest unless the defendant timely files a
sworn written denial that specifically identifies the taxes, penalties, and interest that are not due." 
Tex. Tax Code Ann. § 111.013(b) (West 2002). Noorani's failure to file a sworn written denial
is fatal to his defense and for that reason alone, the judgment against him is affirmed. See id.;
see also Schwarz v. State, No. 03-00-00586-CV, 2001 Tex. App. LEXIS 3585 (Tex. App.--Austin
May 31, 2001, no pet.) (not designated for publication). We overrule Noorani's legal and factual
sufficiency issue.


 Kareem Hassan

 We likewise conclude that the evidence is legally and factually sufficient to support
the judgment rendered against Noorani's president, Kareem Hassan. Section 111.016(b) of the tax
code provides that:


 an individual who controls or supervises the collection of tax or money from another
person, or an individual who controls or supervises the accounting for and paying
over of the tax or money, and who wilfully fails to pay or cause to be paid the tax or
money is liable as a responsible individual for an amount equal to the tax or money
not paid or caused to be paid.


Tex. Tax Code Ann. 111.016(b) (West 2002) (emphasis added). "Responsible individual" is
defined to


 includ[e] an officer, manager, director, or employee of a corporation, association, or
limited liability company or a member of a partnership who, as an officer, manager,
director, employee, or member, is under a duty to perform an act with respect to the
collection, accounting, or payment of a tax or money subject to the provisions of
Subsection (a) [of section 111.016].


Tex. Tax Code Ann. 111.016(d)(1) (West 2002).

 In his response to request for admissions, Hassan admitted that he was an officer of
Noorani Gas & Convenience, Inc. during the liability period and that he owns the majority interest
in Noorani's stock. Hassan signed the audit's questionnaire as the corporation's president, and
represented himself to be the corporation's president during the course of the audit. We conclude
that there is legally and factually sufficient evidence that Hassan is liable for the full amount of
the judgment as a "responsible individual" under section 111.016(b) of the tax code. See Tex. Tax
Code Ann. § 111.016(b), (d)(1); Ghashim v. State, 104 S.W.3d 184, 187 (Tex. App.--Austin 2003,
no pet.). We overrule Hassan's legal and factual sufficiency issue.


 HIB Enterprises

 Similarly, we conclude that there is legally and factually sufficient evidence to
support the judgment against HIB Enterprises. The State sued HIB alleging that it is obligated to pay
the tax liability of Noorani as a legal successor to and or purchaser of the convenience store business
under section 111.020 of the tax code. Section 111.020 of the tax code provides that when a person
with unpaid tax debt sells or quits his business "the successor to the seller or the seller's assignee
shall withhold an amount of the purchase price sufficient to pay the amount due until the seller
provides a receipt from the comptroller showing that the amount has been paid or a certificate stating
that no amount is due." Tex. Tax Code Ann. § 111.020(a) (West 2002). A purchaser who fails to
withhold the tax amount due "is liable for the amount required to be withheld to the extent of the
value of the purchase price." Id. § 111.020(b) (West 2002). HIB argues that its liability under
section 111.020(b) is limited to the value of the purchase price, which, according to the bill of sale
contained in the record, was $25,000. HIB, however, overlooks the district court's sanctions
ordering that HIB "may not oppose" the State's claims that it "acquired the [convenience store]
business . . . subsequent to the liability periods shown by the comptroller certificates . . . for
consideration in excess of the amounts shown in the certificates." HIB has not challenged the district
court's sanctions on appeal. We therefore must affirm the district court's judgment holding HIB
jointly and severally liable for the full amount of the tax liability, including the amount in excess of
the purchase price of the convenience store. We overrule HIB's legal and factual sufficiency issues.


 Harish Bhagwanani

 Finally, we conclude that the evidence is legally and factually sufficient to support
the individual liability of HIB's president, Harish Bhagwanani. The State asserted liability as to
Bhagwanani individually based on a veil-piercing theory. The court will "pierce the corporate veil"
or disregard the corporate fiction, and hold an individual shareholder liable "when the corporate form
has been used as part of a basically unfair device to achieve an inequitable result." Castleberry
v. Branscum, 721 S.W.2d 270, 271 (Tex. 1986). Among other situations, courts will pierce the
corporate veil when the corporation is used as a means of perpetrating fraud or when the corporate
fiction is resorted to as a means of evading an existing legal obligation. Id. at 272. Courts
have consistently pierced the corporate veil when an indebted corporation transfers assets to
another corporation to avoid a judgment or debt. See Love v. State, 972 S.W.2d 114, 120
(Tex. App.--Austin 1998, no pet.) (former corporate directors individually liable for penalties
assessed against corporation when they transferred indebted corporations assets to another company
that they controlled in order to avoid paying penalties); Klein v. Sporting Goods, Inc., 772 S.W.2d
173, 176 (Tex. App.--Houston [14th Dist.] 1989, writ denied) (corporate shareholder liable for
corporation's debts when he incorporated new company to avoid foreclosed corporation's creditors).

 In determining whether to pierce the corporate veil and hold Bhagwanani individually
liable, the district court could have considered the factors found in Section 111.024 of the tax code. 
Section 111.024 provides that "[a] person who acquires a business or the assets of a business from
a taxpayer through a fraudulent transfer or a sham transaction is liable for any tax, penalty, and
interest owed by the taxpayer." Tex. Tax Code Ann. § 111.024(a) (West 2002). Under this section,
a transfer of a business or the assets of a business is considered to be a fraudulent transfer or a sham
transaction if the taxpayer made the transfer "with intent to evade, hinder, delay, or prevent the
collection of any tax, penalty, or interest owed by the taxpayer." Id. § 111.024(b). Among the
factors that a fact-finder may consider in determining the taxpayer's intent, are whether "the
taxpayer's business and the transferee's business are essentially operated as a single business entity
at the same location," id. § 111.024(c)(4), and whether "before the transfer or the transaction
occurred, the taxpayer had either been subjected to or apprised of impending collection action by the
comptroller or by the attorney general." Id. § 111.024(c)(5).

 Here, Bhagwanani admitted that HIB continues in the same business previously
conducted by Noorani and conducts the business under the same name, at the same location, using
the same telephone number. Furthermore, the record reflects that Noorani sold the business to HIB
thirty-eight days after it was presented with the audit results. Bhagwanani admitted that he owns the
controlling interest of HIB's stock and is in control of the company's financial affairs and the record
reflects that Bhagwanani signed the bill of sale as HIB's president. We conclude that there is legally
and factually sufficient evidence to support a finding that Bhagwanani used his corporate form, HIB,
as a sham to perpetuate a fraud--i.e. to avoid the payment of taxes. Accordingly, we overrule
Bhagwanani's legal and factual sufficiency issue. (2)


CONCLUSION

 Because the appellants did not satisfy the Craddock requirements entitling them to
have the default judgment against them set aside, we conclude that the district court did not abuse
its discretion in overruling their motion for new trial. Furthermore we conclude that there is legally

 and factually sufficient evidence to support the judgment against all of the appellants. Accordingly
we affirm the district court's judgment.



 ____________________________________________

 Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: April 24, 2008
1. Although the statement of facts in HIB's and Bhagwanani's brief on appeal states that
"Mr. Bhagwanani disputes any notice or knowledge of this suit until after the default judgment was
taken," none of the defendants raise lack of service in their arguments on appeal. In any event, we
note that Mr. Clay filed an answer on behalf of all of the defendants on December 8, 2003, making
service of citation unnecessary. See Tex. R. Civ. P. 121. The filing of an answer or some
other appearance generally waives any defect in the service of citation. See Baker v. Monsanto Co.,
111 S.W.3d 158, 160 (Tex. 2003) (per curiam).

2. Bhagwanani and HIB also complain that there was no evidence to support the district
court's injunction prohibiting them from continuing in the business of making taxable sales in the
State of Texas. Section 111.011(a) of the tax code allows the State to bring suit to enjoin taxpayers
who fail or refuse to remit taxes that are due from their business from continuing in that business
until the taxes due are paid. See Tex. Tax Code Ann. § 111.011(a) (West 2002). Because there is
sufficient evidence that HIB and Bhagwanani are liable for the taxes sought, the district court did
not err in issuing the injunction.