TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-03-00500-CV






Limestone Construction, Inc., Appellant



v.



Summit Commercial Industrial Properties, Inc., Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 03-368-C368, HONORABLE BURT CARNES, JUDGE PRESIDING





O P I N I O N




 Limestone Construction, Inc. (Limestone) appeals from the district court's overruling,
by operation of law, Limestone's motion for new trial challenging a default no-evidence summary
judgment. Limestone claims that the affidavit it filed with its new trial motion, which averred that
Limestone did not receive prior notice of the summary judgment motion or hearing, conclusively
entitles it to relief. Appellee Summit Commercial Industrial Properties, Inc. (Summit) contends that
Limestone, in effect, waived its right to relief by failing to comply with the Williamson County local
rules for obtaining a hearing on its motion. Because we hold that Limestone's affidavit established
its entitlement to a new trial on the record before us, we must reverse the trial court and remand for
a new trial.


BACKGROUND


 The underlying dispute arises from a real estate transaction, the details of which are
unnecessary to address the issues before us. To summarize, Limestone filed suit against several
defendants, including Summit, for common law fraud, statutory fraud, and negligent
misrepresentation arising from Limestone's attempt to purchase development property that later
proved to be subject to federal endangered species restrictions.

 On March 27, 2003, Summit filed a no-evidence motion for summary judgment and
obtained a hearing for April 21. See Tex. R. Civ. P. 166a(i). The motion contained a certificate of
service prepared by Summit's attorney that complied with Texas Rule of Civil Procedure 21a. The
certificate stated that "on March 27, 2003, a true and correct copy of the foregoing No Evidence
Motion for Summary Judgment has been forwarded via certified mail, return receipt requested" to
Limestone's attorney at "7475 Skillman, # 101-A, Dallas, Texas." It also referenced certified mail
certificate number 7002 2030 0000 8852 4469 as having been posted to Limestone's attorney. 
Written in bold, capital letters just below the certificate of service was the following: "A HEARING
HAS BEEN SCHEDULED FOR APRIL 21, 2003, AT 9:00 A.M., ON THE NO EVIDENCE
MOTION FOR SUMMARY JUDGMENT, IN THE ABOVE REFERENCED MATTER."

 Limestone did not file a response to the summary judgment motion. The summary
judgment hearing was held on April 21 as scheduled, but Limestone's attorney did not attend. The
trial court granted summary judgment in an order reflecting that "Plaintiff failed to appear or
respond." Limestone's attorney later claimed that he learned of the summary judgment motion and
hearing for the first time "mid-morning" on April 21, when he received a call from Summit's
attorney's office inquiring whether he had intended to attend the hearing.

 Upon obtaining summary judgment, Summit filed a motion to sever Limestone's
claims against it so as to make the order final and appealable. Summit set its severance motion for
hearing on May 22. Limestone does not dispute that it had notice of the severance motion and
hearing, but neither filed a response nor appeared at the hearing. On May 22, the trial court granted
the severance.

 On June 23, the last day on which it could do so, (1) Limestone filed a motion for new
trial. The motion, supported by the affidavit of Limestone's attorney, relied solely on the ground that 
Limestone had not received notice of the summary judgment motion or hearing until after the
hearing. Limestone's attorney further testified that he had received no notice of any attempted failed
delivery of certified mail regarding the summary judgment proceedings until Summit's attorney
advised him of same by letter of April 21, 2003. Thereafter, Limestone's attorney went to the post
office "and they had no undelivered mail addressed to me, being held for me, nor did they know of
any which had been held for me." He acknowledged that he shared his office with another attorney
and a secretary who were authorized to sign for his mail, and "routinely" would do so. But he added,
"To my knowledge, no mail has ever been refused by failure of the other attorney or his secretary
to sign for mail addressed to me."

 Limestone's letter transmitting its new trial motion to the Williamson County District
Clerk purported to request a hearing "on or before July 25, 2003." (2) The Williamson County local
rules require that all settings for non-jury matters be obtained through the office of court coordinator
for each of the county's district courts. Williamson County (Tex.) Dist. Ct. Loc. R. III, B.1. There
is no evidence that Limestone complied with these procedures or otherwise made further attempts
to obtain a hearing. 

 On September 5, the seventy-fourth day after the summary judgment became final
and appealable, Summit filed an affidavit from its attorney in opposition to Limestone's new trial 
motion. Summit's attorney averred that on March 27, 2003, he sent to Limestone's attorney's office,
by certified mail, return receipt requested, reference number 7002 2030 0000 8852 4469, a copy of
Summit's no-evidence summary judgment motion and notice of hearing. Attached to the affidavit
was a copy of the front side of the transmittal envelope, which had been returned to Summit's
attorney's office on May 28, 2003. The envelope had a postal service stamp mark indicating an
attempted delivery on March 28 and three stamps stating "Returned to Sender-Unclaimed."

 Also attached to the affidavit was a computer printout dated April 21, 2003, signed
and stamped by a postal employee on the same date, indicating that the envelope had been mailed
on March 27, 2003, from ZIP code 78626 in Georgetown to ZIP code 75231 in Dallas, and that
notice had been left at the Dallas ZIP code on March 28. Although the 75231 Dallas ZIP code
corresponded to that of Limestone's attorney, the report did not state a specific address at which the
notice had been left. (3)

 No hearing on Limestone's new trial motion was ever set or held and, on September
6, 2003, the seventy-fifth day after the summary judgment became appealable, Limestone's motion
for new trial was overruled by operation of law. See Tex. R. Civ. P. 329b(c). This appeal ensued.


DISCUSSION


 Limestone brings a single issue complaining that the trial court abused its discretion
in failing to grant its motion for new trial.


Standard of review

 Trial courts have broad discretion in ruling on motions for new trial. We review the
denial of a motion for new trial for an abuse of discretion. Cliff v. Huggins, 724 S.W.2d 778, 778-79
(Tex. 1987); Smith v. Holmes, 53 S.W.3d 815, 817 (Tex. App.--Austin 2001, no pet). When a
motion for new trial is overruled by operation of law, as here, the question becomes whether the trial
court abused its discretion in allowing the motion to be overruled. Bank One of Tex., N.A. v. Moody,
830 S.W.2d 81, 85 (Tex. 1992).

 A trial court abuses its discretion when it fails to correctly analyze or apply the law. 
In re Dupont De Nemours & Co., 136 S.W.3d 218, 223 (Tex. 2004); Comanche Nation v. Fox, 128
S.W.3d 745, 749 (Tex. App.--Austin 2004, no pet.). In matters committed to a trial court's
discretion, the test is whether the trial court acted arbitrarily or without reference to guiding legal
principles. Cire v. Cummings, 134 S.W.3d 835, 838 (Tex. 2004).


Standards governing new trial motions challenging default summary judgments

 Limestone assumes that the trial court's disposition of its new trial motion is
controlled by the equitable standard that the Texas Supreme Court established in Craddock v.
Sunshine Bus Lines, Inc., (4) to review motions for new trial challenging no-answer default judgments
and post-answer default judgments where a party fails to appear at trial on the merits. See also Ivy
v. Carrell, 407 S.W.2d 212, 214 (Tex. 1966) (extending Craddock equitable principles to post-answer default judgments where party fails to appear at trial on the merits). Under Craddock and
its progeny, a default judgment should be set aside when the party against whom the judgment is
taken establishes that (1) the failure to answer (or appear) was not intentional or the result of
conscience indifference, but the result of an accident or mistake; (2) the motion for new trial sets up
a meritorious defense; and (3) granting the motion will occasion no undue delay or otherwise injure
the party taking the default judgment. Smith v. Babcock & Wilcox Constr. Co., 913 S.W.2d 467, 468
(Tex. 1995); Craddock, 133 S.W.2d at 126.

 It is unclear, however, whether the Craddock equitable standard applies in the default
summary judgment context. Some of our sister courts of appeals have applied a variant of the
Craddock standard in the default summary judgment context: (1) the failure to answer must not have
been intentional or the result of conscience indifference, but the result of an accident or mistake; and
the nonmovant's motion for new trial must (2) allege facts and contain proof sufficient to raise a
material question of fact; and (3) demonstrate that the granting thereof will occasion no delay or
otherwise work an injury to the movant. (5) But this Court has never applied Craddock in the default
summary judgment context, and the Texas Supreme Court more recently held that a different, "good
cause" standard applies, at least in cases where a summary judgment nonmovant fails to timely
respond, but learns of its failure prior to the summary judgment hearing and has an opportunity to
seek a remedy under the rules of civil procedure, such as a continuance or leave to file a late
response. Carpenter v. Cimarron Hydrocarbons Corp., 98 S.W.3d 682, 685-86 (Tex. 2002). (6)

 The Cimarron "good cause" standard is similar to the first and third elements of the
Craddock standard. It requires the nonmovant to show: (1) the failure to respond was not intentional
or the result of conscious indifference, but the result of accident or mistake; and (2) allowing the late
response will occasion no undue delay or otherwise injure the party seeking summary judgment. Id.
at 688. (7) The supreme court expressly reserved the question of whether Craddock or its new "good
cause" standard would apply where a party did not learn of its failure to respond prior to the
summary judgment motion or hearing. Id. at 686. (8)

 A related unresolved issue in our Court is how we would apply Craddock or
Cimarron when a summary judgment nonmovant establishes they did not receive the motion. In the
context of non-summary judgment no-answer or post-answer default judgments, our court has
regarded lack of notice, if established, as a substitute for the first Craddock element. Smith, 53
S.W.3d at 817. Once a party establishes such lack of notice, moreover, due process requires that it
prevail without need to prove the other Craddock elements. Id.; see also Lopez v. Lopez, 757
S.W.2d 721, 722 (Tex. 1988) (citing Peralta v. Heights Med. Ctr, Inc., 485 U.S. 80 (1988)). Some
of our sister courts have applied these principles to the default summary judgment context, both
before and after Cimarron. Rabie v. Sonitrol of Houston, Inc., 982 S.W.2d 194, 197-98 (Tex.
App.--Houston [1st Dist.] 1998, no pet.); see also Cantu v. Valley Baptist Med. Ctr., No. 13-02-321-CV, 2003 Tex. App. LEXIS 7379, at *3 (Tex. App.--Corpus Christi Aug. 28, 2003, no. pet.)
(memorandum opinion). (9)

 We believe these due process principles would logically extend at least to the "no
evidence" summary judgment context, where the viability of the nonmovant's claims or defenses that
are targeted by the summary judgment motion rest entirely (barring some form of self-inflicted
procedural defect of the movant) upon the nonmovant's ability to respond and raise a fact issue. 
Tex. R. Civ. P. 166a(i) ("The court must grant the motion unless the respondent produces summary
judgment evidence raising a genuine issue of material fact."). We also believe this to be true
regardless of which test, Craddock or Cimarron, would otherwise govern. The first element of each
test is similar. (10) If due process concerns require that the absence of notice issue supplants the first
element of the Craddock test and obviates the need to prove other elements, we see no basis for
treating the Cimarron test any differently. Accordingly, we need not address whether Craddock or
Cimarron governs, but only whether Limestone established that it did not receive notice of Summit's
summary judgment motion and hearing.


Application

 Limestone's motion for new trial is based solely on its claim that it did not receive
prior notice of Summit's summary judgment motion and hearing. We initially note that the historical
trend is towards the liberal granting of motions for new trial filed after default judgments. Custom-Crete, Inc. v. K-Bar Servs., 82 S.W.3d 655, 658 (Tex. App.--San Antonio 2002, no pet.); Norton
v. Martinez, 935 S.W.2d 898, 901 (Tex. App.--San Antonio 1996, no writ); Miller v. Miller, 903
S.W.2d 45, 47 (Tex. App.--Tyler 1995, no writ). But bare allegations of lack of notice do not
suffice; instead, the nonmovant must offer evidence, either in the form of an affidavit or live
testimony. Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 82 (Tex. 1992). We thus turn to
evidentiary record.

 It is undisputed that Limestone's summary judgment motion contained a certificate
of service complying with Texas Rule of Civil Procedure 21a. "A certificate by a party or an
attorney of record, or the return of an officer, or the affidavit of any person showing service of a
notice shall be prima facie evidence of the fact of service." Tex. R. Civ. P. 21a. That the motion
was mailed creates a rebuttable presumption that it was received. Smith, 53 S.W.3d at 817 (citing
Thomas v. Ray, 889 S.W.2d 237, 238 (Tex. 1994)). But a presumption is not evidence, and it
vanishes when opposing evidence is introduced that the notice in question was not received. Cliff,
724 S.W.2d at 780.

 In this case, the presumption of service was rebutted in two ways. First, Limestone's
attorney unequivocally denied receiving notice of the summary judgment motion, notice of the
hearing, or even notice that the post office had attempted to deliver those items. The second is
Summit's own affidavit. At most, Summit's affidavit and attachments demonstrate that the postal
service attempted to deliver Summit's summary judgment motion somewhere in the ZIP code
corresponding to Limestone's attorney's office and that the package was eventually returned
"unclaimed." None of this constitutes a certification by the postal service that it delivered the notices
to Limestone, and it does not controvert Limestone's affidavit. Rabie, 982 S.W.2d at 197 (notations
on envelope that postal service made two attempts to deliver summary judgment motion and returned
it "unclaimed" did not controvert nonmovant's affidavit that he never received notice). (11) Instead,
by demonstrating that the package was returned "unclaimed," Summit's affidavit constitutes further
proof that Limestone did not receive it.

 Summit places greatest reliance on two arguments predicated on Limestone's failure
to obtain a hearing on its new trial motion. First, it relies on a line of cases suggesting that,
regardless of the state of affidavit proof, a new trial movant waives its right to relief if it fails to
obtain a hearing in order to afford the trial court the "opportunity to exercise its discretion." See
Fluty v. Simmons Co., 835 S.W2d 664, 668 (Tex. App.--Dallas 1992, no writ); Shamrock Roofing
Supply, Inc. v. Mercantile Nat'l Bank, 703 S.W.2d 356, 357 (Tex. App.--Dallas 1985, no writ). (12) 
As Justice Guittard explained in Shamrock:


We are unwilling to hold that an abuse of discretion occurs when the defaulting
defendant fails to call his motion to the judge's attention and allows it to be overruled
by operation of law. Trial judges have a heavy load of trials and contested motions. 
They cannot be expected to examine sua sponte all papers filed in their courts. They
must rely on counsel to see that motions are set for hearing. 



Id. at 357-58. (13)

 Limestone seeks to distinguish these decisions as involving instances where no
request for a hearing on the motion for new trial was ever made. See Continental Carbon Co. v. Sea-Land Serv., Inc., 27 S.W.3d 184, 188 (Tex. App.-Dallas 2000, pet. denied) (distinguishing Shamrock
and finding no waiver where plaintiff twice obtained hearing dates that were postponed at request
of defendant before new trial motion was overruled by operation of law). Here, Limestone did
purport to request a hearing in its transmittal letter to the Williamson County District Clerk, although
these steps were ineffective under the local rules of Williamson County, which require hearing
requests to be directed to the court coordinator. Williamson County (Tex.) Dist. Ct. Loc. R. III,
B.1. (14) We need not address the implications, under the Shamrock line of cases, of Limestone's
noncompliance with the Williamson County hearing procedures because we are bound to follow
authority from our court that is contrary to Shamrock. (15)

 In Smith v. Holmes, we considered a new trial motion supported by an affidavit from
a prisoner denying receipt of a notice of trial setting before a post-answer default judgment was taken
against him. The appellees presented evidence not only of a signed certificate of service, but also
a signed "green card" (presumably executed by someone else at the prison) acknowledging receipt
of service by certified mail. We held that an affidavit by the prisoner unequivocally denying receipt
of the notice not only overcame the prima facie presumption of notice, but conclusively established
lack of notice where the appellee who had taken the default judgment had not requested an
evidentiary hearing. Smith, 53 S.W.3d at 817-18. We relied on the proposition that "[o]n a motion
for new trial, the trial court is bound to accept as true the affidavits of the movant, unless the
opponent requests an evidentiary hearing." Id. at 818 (emphasis added). Thus, under our precedents,
Summit had the burden to request an evidentiary hearing if it wanted to prevent the trial court from
taking Limestone's affidavit as true. Limestone did not waive its rights by failing to obtain such a
hearing. (16)

 In its other chief argument, Summit urges that if the hearing had been held, the trial
court would have been within its discretion to overrule the motion. In particular, Summit suggests
that the evidence was such that the trial court would have been within its discretion to overrule
Limestone's motion on the basis that Limestone had constructive notice under the rule of Gonzales
v. Surplus Ins. Serv., 863 S.W.2d 96, 101-02 (Tex. App.--Beaumont 1993, writ denied)
(constructive notice of document can be imputed to party where there is evidence that party engaged
in "selective refusal/acceptance" of certified mail). We disagree for two reasons.

 Because there was no hearing, the trial court was required to take Limestone's
affidavit as true. Smith, 53 S.W.3d at 818. We will not speculate as to what the proof at a hearing
might have been, much less evaluate the trial court's disposition of Limestone's new trial motion on
that basis, especially where it was Summit's burden to request the hearing. Id. And we do not view
the evidence in the affidavits as rising to the level from which the trial court could have concluded
that Limestone engaged in selective refusal or acceptance of certified mail. The mere fact that the
package was returned unclaimed is not evidence that Limestone refused or evaded delivery. Rabie,
982 S.W.2d at 197. At most, Limestone's affidavit stops short of conclusively negating the
possibility that some other person in Limestone's attorney's office, without his knowledge, declined
to accept delivery of Summit's summary judgment papers. (17) But it is not affirmative evidence that
such selective refusal or evasion occurred. Rabie, 982 S.W.2d at 197 n.3 (distinguishing Gonzalez
as involving evidence of "repeated instances of selective acceptance and refusal of certified mail");
cf. Smith, 53 S.W.3d at 818 (nonmovant's uncontested denial that he received notice overcame any
inference that others at prison who signed the green card forwarded the notice to him). Again, it was
Summit's burden to adduce such evidence, if it existed.

 Because Limestone's affidavit proof thus establishes that it did not receive notice of
Summit's summary judgment motion or hearing, we are compelled to hold that the trial court abused
its discretion in overruling Limestone's motion for new trial by operation of law.


CONCLUSION


 We reverse the judgment of the trial court and remand for a new trial.



 

 Bob Pemberton, Justice

Before: Justices Kidd, B. A. Smith and Pemberton

Reversed and Remanded

Filed: August 26, 2004

1. Tex. R. Civ. P. 329b(a). The thirtieth day after the May 22 severance order was a Saturday,
June 21. Id. R. 4. 
2. The letter went on to explain that Limestone's counsel would be out of state between July
27 and August 13 on family vacation and attending continuing legal education programs.
3. Limestone did not object to the admissibility of this document.
4. 133 S.W.2d 124 (Tex. 1939). 
5. See, e.g., Huffine v. Tomball Hosp. Auth., 979 S.W.2d 795, 799 (Tex. App.--Houston [14th
Dist.] 1998, no pet.); Medina v. Western Waste Indus., 959 S.W.2d 328, 330 (Tex. App.--Houston
[14th Dist.] 1997, pet. denied); Washington v. McMillan, 898 S.W.2d 392, 396 (Tex. App.--San
Antonio 1995, no writ); Gonzales v. Surplus Ins. Servs., 863 S.W.2d 96, 102 (Tex. App.--Beaumont
1993, writ denied); Krchnak v. Fulton, 759 S.W.2d 524, 528-29 (Tex. App.--Amarillo 1988, writ
denied); Costello v. Johnson, 680 S.W.2d 529, 531 (Tex. App.--Dallas 1984, writ ref'd n.r.e.).
6. The supreme court reasoned: 


Our purpose in adopting the Craddock standard was to alleviate unduly harsh and
unjust results at a point in time when the defaulting party has no other remedy
available. See Craddock, 133 S.W.2d at 126. But when our rules provide the
defaulting party a remedy, Craddock does not apply. Thus, we hold that
Craddock does not apply to a motion for new trial filed after judgment has been
granted on a summary-judgment motion to which the nonmovant failed to timely
respond when the movant had an opportunity to seek a continuance or obtain
permission to file a late response. Here, the facts necessary to establish good
cause were available from Cimarron's own counsel and his employees two days
before the summary-judgment hearing. The facts were all ascertainable without
resort to any time-consuming formal discovery processes. Because Cimarron had
an opportunity to seek a continuance or leave to file a late response, the court of
appeals erred in applying Craddock.


Carpenter v. Cimarron Hydrocarbons Corp., 98 S.W.3d 682, 686 (Tex. 2002).
7. Although the supreme court discussed this standard in the context of reviewing the trial
court's denial of leave for the nonmovant to file a late summary judgment response, it applied the
same standard to the nonmovant's motion for new trial. Id. at 688.
8. In a lone concurrence, Justice Hecht went further to suggest that "[t]he reason the Craddock
standards should not apply is that the failure to timely answer a petition and the failure to timely
respond to a motion for summary judgment are very different situations." 98 S.W.3d at 689 (Hecht,
J., concurring).


 To date, both the Corpus Christi and El Paso Courts of Appeals, in memorandum opinions,
have suggested that Craddock applies where a summary judgment nonmovant does not receive
notice of the motion or hearing prior to the hearing. Cantu v. Valley Baptist Med. Ctr., No. 13-02-321-CV, 2003 Tex. App. LEXIS 7379, at *3 n.2 (Tex. App.--Corpus Christi Aug. 28, 2003, no. pet.)
(memorandum opinion) (applying Craddock in lieu of Cimarron where "appellant contends she
never received notice, and only found out about the summary judgment hearing after the default
summary judgment was entered"); Olien v. University of Tex. of the Permian Basin, No. 08-02-00300-CV, 2003 Tex. App. LEXIS 1549, at *4 (Tex. App.--El Paso Feb. 20, 2003, no pet.)
(memorandum opinion) (the situation in Cimarron "is not the case here": nonmovant did not become
aware of the hearing until after the trial court had already granted summary judgment). On the other
hand, while ultimately deciding the case on other grounds, the Beaumont Court of Appeals observed
that Cimarron "called into serious question" whether Craddock would apply where a summary
judgment nonmovant did not discover his error until after the hearing. Stanley v. CitiFinancial Mort.
Co., 121 S.W.3d 811, 815-16 (Tex. App.--Beaumont 2003, pet. filed).
9. We also note that the pre-Cimarron cases cited in note 5, supra, each applied the full
Craddock test in situations where the nonmovant had received notice but nonetheless failed to
respond or appear in opposition to the summary judgment motion.
10. See Texas Dep't of Pub. Safety v. Friedel, 112 S.W.3d 768, 771 (Tex. App.--Beaumont
2003, no pet.) ("The Carpenter [v. Cimarron] test for good cause is essentially the first and third
elements of the Craddock test."). 
11. As was observed in Rabie, there are means by which a party can establish that the postal
service made a delivery, or attempted to do so, including various postal service forms or the affidavit
of a postal clerk. See Rabie v. Sonitrol of Houston, Inc., 982 S.W.2d 194, 197 (Tex. App.--Houston
[1st Dist.] 1998, no pet.). 
12. A panel of this court followed Shamrock Roofing Supply, Inc. v. Mercantile Nat'l Bank,
703 S.W.2d 356, 357 (Tex. App.--Dallas 1985, no writ) in a single unreported decision, Truong v.
Rose. No. 03-99-00740-CV, 2000 Tex. App. LEXIS 5281, at *3 (Tex. App.--Austin Aug. 10, 2000,
no pet.) (not designated for publication); see also McGuire v. Commission for Lawyer Discipline,
No. 14-01-00920-CV, 2003 Tex. App. LEXIS 1510, at *4 (Tex. App.--Houston [14th Dist.] Feb.
20, 2003, pet. denied) (memorandum opinion) (holding no abuse of discretion in allowing new trial
motion to be overruled by operation of law where defendant fails to call court's attention to motion). 
We note that unreported opinions are not binding authority. Tex. R. App. P. 47.7 ("[o]pinions not
designated for publication by the court of appeals under these or prior rules have no precedential
value but may be cited with the notation, '(not designated for publication)'"); see also Ortega v. City
Nat'l Bank, 97 S.W.3d 765, 773 n.7 (Tex. App.--Corpus Christi 2003, no pet.).
13. The Shamrock court insisted that it was not relying on the "presentment" requirement of
the pre-1981 version of Texas Rule of Civil Procedure 329b. Shamrock, 703 S.W.2d at 358. That
rule required a new trial movant to "present the same to the trial court," which the supreme court
interpreted to require "no more than that the movant must call the motion to the court's attention and
ask for a ruling upon the same or face the possibility that the court will not act and allow the motion
to be overruled by operation of law." Moore v. Maudlin, 428 S.W.2d 808, 809 (Tex. 1968). Rule
329b was amended in 1981 to delete the "presentment" requirement. See Cecil v. Smith, 804 S.W.2d
509, 511 n.3 (Tex. 1991).
14. Limestone does not dispute the applicability of these rules. See Tex. R. Civ. P. 3a.
15. Nor do we address whether we can square Shamrock with Texas Supreme Court
precedent. See Strackbein v. Prewitt, 671 S.W.2d 37, 38 (Tex. 1984) ("It is sufficient that the
movant's motion and affidavits set forth facts which, if true, would negate intentional or consciously
indifferent conduct.").
16. For the same reasons, we attribute no significance to what Summit characterizes as
Limestone's lack of diligence in obtaining a hearing or in opposing severance. 
17. While unequivocally denying having personal notice of Summit's summary judgment
papers or their attempted delivery, Limestone's attorney goes on to observe that a lawyer with whom
he shared an office and a secretary were authorized to accept his mail, and did so "routinely" when
he was out of the office. They were thus his agents for these purposes, and their actions in this
regard would be imputed to him. See Elite Towing, Inc. v. LSI Fin. Gr., 985 S.W.2d 635, 642-43
(Tex. App.--Austin 1999, no pet.). Limestone's attorney added that he had been out of the office
on March 28, the day the post office attempted to deliver Summit's papers. He goes no farther than
to state that, "To my knowledge, no mail has ever been refused by failure of the other attorney or his
secretary to sign for mail addressed to me." (emphasis added).