

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-15-00401-CV

STEVEN WEBB, D/B/A LEANDER TRUX-N-KARZ, APPELLANT

V.

GLENCO UPSHAW, APPELLEE

On Appeal from the 368th District Court
Williamson County, Texas[1]
Trial Court No. 11-613-C368, Honorable Rick J. Kennon, Presiding

May 20, 2016

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellant, Steven Webb, appeals the granting of a motion for summary judgment in favor of Glenco Upshaw in Upshaw's Deceptive Trade Practice Act (DTPA) suit against Webb.[2] For the reasons hereinafter set forth, we will affirm in part and reverse in part.

---

[1] Pursuant to the Supreme Court's docket equalization efforts, this case was transferred to this Court from the Third Court of Appeals. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).

[2] *See* TEX. BUS. & COM. CODE ANN. §§ 17.01-.926 (West 2011 & Supp. 2015). Further reference to the Texas Business & Commerce Code will be by reference to "section ____" or "§ ____."

## Factual and Procedural Background

This suit arose out of the purchase by Upshaw of a 1997 Ford Mustang from Webb. Upshaw alleges that, at the time of the purchase, he was in the market to buy a car that got better gas mileage than his Ford SUV. In connection with this effort, he visited Trux-N-Karz in Leander, Texas. At the time he visited the car lot, he dealt with Webb.

According to Upshaw, he saw the Mustang and began asking about the vehicle. Upshaw further alleges that Webb made certain representations about the Mustang to him. Principally, Webb represented that the Mustang had less than 100,000 miles on it, the radio was operational, the Mustang was in great driving condition, and the Mustang had no problems.

When Upshaw viewed the Mustang he was not able to test-drive it because it was surrounded by other vehicles in such a manner that it could not be driven. However, Webb advised that he could start the car and Upshaw did so. Upshaw alleges that the car idled smoothly. Upshaw contends that he was specifically advised that the Mustang had not been in any wrecks and had no mechanical problems. When Upshaw asked about a CARFAX[3] report, he was advised by Webb that Webb did not have a CARFAX report on the Mustang.

After viewing the Mustang, Upshaw agreed to trade in his Ford SUV for the Mustang. Upshaw agreed to pick the Mustang up in a couple of days. Upon returning to the car lot two days later, Upshaw picked up the Mustang and headed to College

---

[3] CARFAX is a nationwide reporting system whereby a purchaser can review the ownership and operational history of a vehicle.

Station, where he attended school. Before travelling out of the city limits of Leander, Upshaw noticed that the speedometer, odometer, air conditioner, and heater were not operational. Upshaw attempted to contact Webb immediately by telephone; however, Webb refused to answer his calls.

Upshaw finally spoke to Webb when Upshaw used a cell phone other than his own. Webb was asked to rescind the trade and refused. According to Upshaw, Webb advised the only way he could get his Ford SUV back was to pay an additional $550. Eventually, Webb advised Upshaw that another customer had purchased his Ford SUV.

When Upshaw further inspected the Mustang, he found that fuses were missing. After he changed the fuses the radio worked; however, the check engine light immediately came on. Within days, the Mustang would not even start and, eventually, it was towed from his apartment complex.

Upshaw sent a demand letter to Webb that went unanswered. Thereafter, this lawsuit was initiated. Upshaw filed suit alleging a number of causes of action. Those actions, as pertinent to this appeal, are as follows:

> 1. That Webb committed false, misleading and deceptive acts, practices, and/or omissions as defined by section 17.46(a) of the DTPA. *See* § 17.46(a).
>
> 2. Webb's actions constitute an unconscionable action or course of action by taking advantage of Upshaw's lack of knowledge, ability, experience, or capacity. *See* § 17.45(5).
>
> 3. Webb represented that the goods in question were of a particular standard, quality, or grade, when they were of another. *See* § 17.46(b).
>
> 4. Webb engaged in false, misleading, or deceptive acts as provided by section 392.304(a)(8) of the Texas Finance Code. Specifically, Webb engaged in misrepresentation of the character, extent, and amount of

3

Upshaw's consumer debt, and further, misrepresented the consumer debt's status in a judicial or governmental proceeding by threats to repossess the vehicle.

Webb answered the lawsuit with a *pro se* response wherein he claimed to have never made any statements regarding the history of the car and claimed to have furnished Upshaw with a CARFAX report. Webb was eventually served with various discovery requests which included original and amended requests for admissions. None of the discovery requests were ever answered by Webb.

Upshaw filed a motion for summary judgment, and Webb never filed a response to the motion. The trial court granted a summary judgment on September 10, 2015. The judgment entered by the trial court found that Upshaw had established entitlement to judgment under the DTPA, Texas Debt Collection Act, and common law fraud. The trial court further found that Upshaw had elected to recover pursuant to the DTPA. The trial court then awarded $10,950 in actual damages to Upshaw, and, based upon Webb's knowingly committing violations under the DTPA, trebled Upshaw's economic damages to the sum of $32,850. The trial court further awarded Upshaw attorney's fees of $15,000.

Webb filed a motion for new trial, contending that his failure to answer the motion for summary judgment was due to mistake or inadvertence and not conscious indifference, that he had a defense to the suit, and that granting the motion for new trial would not cause any detrimental delay to Upshaw. The trial court overruled the motion for new trial following a hearing on the same. This appeal resulted.

Webb now contends on appeal that the trial court erroneously (1) granted Upshaw's motion for summary judgment and awarded the amount of damages that it did, and (2) denied Webb's motion for new trial.

## Motion for New Trial

Although Webb presents this as his second issue, we will address it first because it would, if sustained, provide the greatest relief. *See In re K.W.,* 138 S.W.3d 420, 428 (Tex. App.—Fort Worth 2004, pet. denied).

Webb's motion for new trial alleges that he first had notice of the summary judgment when he received the "Notice of Court Order" from the Williamson County District Clerk that notified him that a final judgment had been entered against him on September 10, 2015. Webb asserted in his amended motion for new trial that, when he received the motion, it appeared as 101 pages that seemed to have been tossed in the air and then shuffled into an envelope. He further contends that, buried on the last page, was a notice of hearing but that the motion and exhibits were in no order and, as a result of this, he was not aware that the motion for summary judgment was set for a hearing. Attached to his amended motion for new trial was the declaration of Steven Webb that essentially tracked the assertions of the motion.

Webb contends that he met the requirements of *Craddock v. Sunshine Bus Lines, Inc.,* 133 S.W.2d 124, 126 (Tex. 1939). Under *Craddock,* a movant for a new trial must (1) establish that the failure to answer was not intentional or due to conscious indifference but, rather, was due to mistake or an accident, (2) set up a meritorious

defense, and (3) demonstrate that the granting of a new trial will not cause delay or otherwise injure the plaintiff. *See id.*

We review a trial court's ruling on a motion for new trial under an abuse of discretion standard. *Dolgencorp of Tex., Inc. v. Lerma,* 288 S.W.3d 922, 926 (Tex. 2009) (per curiam). A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or without reference to any guiding rules and principles. *K-Mart Corp. v. Honeycutt,* 24 S.W.3d 357, 360 (Tex. 2000) (per curiam).

However, the first question we must answer is whether the *Craddock* test is the applicable test with which to view the trial court's rulings. In the case of *Carpenter v. Cimarron,* the Texas Supreme Court held that, in a summary judgment default situation where the defaulting party failed to file a timely response but had the time prior to entry of the summary judgment to obtain leave to file an untimely response or to obtain a continuance, the *Craddock* test did not apply. *See Carpenter v. Cimarron,* 98 S.W.3d 682, 686 (Tex. 2002). However, the court in *Carpenter* left open the test to be applied when the defaulting party did not learn of the summary judgment until after the summary judgment had been entered. *See id.*

The Austin Court of Appeals addressed the question of which standard to apply when reviewing a default summary judgment in the no evidence summary judgment proceeding. *See Limestone Constr., Inc. v. Summit Commercial Indus. Props., Inc.,* 143 S.W.3d 538, 544 (Tex. App.—Austin 2004, no pet.). The *Limestone* court acknowledged that it had never determined whether to apply *Craddock* or *Cimarron* when a summary judgment nonmovant establishes they did not receive the motion. *See id.* at 543–44. Eventually, the *Limestone* court determined that, under the facts of

6

the case, the nonmonvant had established that it did not receive notice of the summary judgment and that the trial court's grant of the summary judgment should be reversed. *See id.* at 547.

The Austin Court of Appeals next addressed the issue in *Lopez v. Cox Tex. Newspapers, L.P.,* No. 03-14-00331-CV, 2015 Tex. App. LEXIS 7653 (Tex. App.—Austin July 23, 2015, no pet.) (mem. op.). In *Lopez,* the appellant, Lopez, argued that the trial court abused its discretion because it did not apply a modified version of the *Craddock* test to his motion because he did not learn of the default until after judgment had been rendered. *See id.* at *3. Lopez's motion asserted that (1) his failure to appear was the result of mistake or accident, (2) that he had a meritorious defense, and (3) Cox lacked standing to pursue its claim against him. *See id.* After reviewing the history of the *Craddock* test in light of the Texas Supreme Court's opinion in *Carpenter,* the *Lopez* court decided it need not decide whether *Craddock* or *Carpenter* applied because the first element in either case was the same and Lopez had not met that requirement. *See id.* at *6. The defaulting party, under either standard, must establish that the failure to respond to the summary judgment was not intentional or the result of conscious indifference but instead was the result of mistake or accident. *See id.* at *5. Eventually, the court concluded that Lopez had failed to meet the first element of either standard and affirmed the trial court's denial of the motion for new trial. *See id.* at *13.

As in *Lopez,* we are not going to attempt to determine which standard should apply; rather, we will concentrate on the first issue regarding the failure to file a response to the summary judgment motion: whether Webb can establish that his failure

to respond to the motion for summary judgment was not intentional or the result of conscious indifference.

According to Webb's declaration, he received an envelope in early August of 2015 by personal delivery from the office of the attorney representing Upshaw. Additionally, Webb avers that when he opened the envelope it was a "jumbled mess of papers." Webb stated he eventually found the first page of the motion and read that it was a motion for summary judgment; however, he also stated he never saw the last page where there was a "Notice of Hearing." Webb goes on to say that he hired an attorney and assumed he would later receive a notice of hearing, and that he did not learn of the summary judgment hearing until he got the notice of judgment being entered against him.

Such was the evidence presented in support of his motion for new trial. If these assertions are presented to the trial court alone, then it might be said that Webb met the burden of establishing that his failure to answer the summary judgment motion was not intentional or due to conscious indifference. *See Sutherland v. Spencer,* 376 S.W.3d 752, 755 (Tex. 2012) (holding that a defendant satisfies its burden as to the first *Craddock* element when its factual assertions, if true, negate intentional or consciously indifferent conduct by the defendant and the factual assertions are not contradicted by the plaintiff). However, here, the factual assertions were contradicted by Upshaw's attorney. At the motion for new trial hearing, the legal assistant for Upshaw's attorney testified that she properly ordered and stapled the motion for summary judgment document. Further, the witness testified that there was no way a delivery person could have dropped and reordered the documents because the same were in an envelope

8

that had been double sealed. Additional testimony was provided by the husband of Upshaw's counsel, Mr. McGirr. He testified that he delivered the sealed envelope to the person listed on the outside of the envelope. Further, Mr. McGirr testified that the envelope was sealed and the papers were in the order that they were when they were delivered to him.

In determining if the appellant's factual assertions are controverted, the court looks to all the evidence in the record. *See Dir., State Emps. Workers' Comp. Div. v. Evans,* 889 S.W.2d 266, 269 (Tex. 1994). Here, the essence of Webb's factual assertions was contradicted by the evidence that Upshaw put in the record at the hearing on the motion for new trial. Therefore, it fell upon the trial court to determine the fact question raised by the conflicting evidence it heard at the motion for new trial hearing. *See Todd v. Heinrich,* No. 01-10-00267-CV, 2011 Tex. App. LEXIS 4258, at *18-19 (Tex. App.—Houston [1st Dist.] June 2, 2011, no pet.) (mem. op.) (citing *Jackson v. Mares,* 802 S.W.2d 48, 50 (Tex. App.—Corpus Christi 1990, writ denied)). The trial judge was charged with the responsibility of ascertaining the true facts, and it was within its province to judge the credibility of the witnesses and to determine the weight to be given their testimony. *See id.*

After reviewing the evidence heard by the trial court at the motion for new trial, we cannot say that the trial court acted in an unreasonable or arbitrary manner or without reference to any guiding rules and principles. *See K-Mart Corp.,* 24 S.W.3d at 360. Accordingly we overrule Webb's issue to the contrary.

DTPA Claims

Standard of Review

We review the trial court's granting of summary judgment de novo. *Ferguson v. Bldg. Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (per curiam). We consider all of the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant, if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not. *See Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 582 (Tex. 2007). The movant for a traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding,* 289 S.W.3d 844, 848 (Tex. 2009). The movant's motion for summary judgment must carry its burden of establishing its right to summary judgment, and the nonmovant need not respond to the motion to contend on appeal that the movant's summary judgment proof is insufficient as a matter of law to support the summary judgment. *See State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents,* 390 S.W.3d 289, 292 (Tex. 2012).

The judgment of the trial court reflects that the trial court found that Upshaw was entitled to a summary judgment on his claims under DTPA, Texas Debt Collection Act, and common law fraud. However, the judgment further reflects that Upshaw elected to recover under the DTPA. We will therefore analyze the propriety of the granting of the summary judgment under the DTPA only. In our analysis, we will first review the issue of liability under DTPA and then the issue of damages, as found by the trial court, under the DTPA cause of action.

<u>Liability under DTPA</u>

Upshaw's motion for summary judgment first alleges that Webb violated the DTPA laundry list in a number of particulars. *See* § 17.46(b). First, Upshaw alleged that Webb made misrepresentations pursuant to section 17.46(b)(5). *See* § 17.46(b)(5). Next, Upshaw alleges that Webb represented that the Mustang was of a particular standard, quality, or grade and that it was not. *See* § 17.46(b)(7). Finally, Upshaw alleges that Webb failed to disclose information concerning the Mustang which was known at the time of the transaction and that failure to disclose information was intended to induce Upshaw into the transaction and he would not have entered into the transaction had he known the information. *See* § 17.46(b)(24).

As to misrepresentations under section 17.46(b)(5), Upshaw alleges that Webb represented that the Mustang had characteristics, uses, or benefits it did not have. The first misrepresentation allegedly made by Webb was that the Mustang had not been involved in an accident. According to the attachment to Upshaw's motion, the CARFAX report showed that the Mustang had been in a collision. Under this general heading, Upshaw's motion for summary judgment alleges that the car was represented having under 100,000 miles on it with an operational radio and was in great driving shape. The CARFAX report and Upshaw's affidavit revealed that the vehicle had in excess of 100,000 miles and that Upshaw did not even get out of Leander before mechanical issues arose. In Upshaw's affidavit, he related that, while attempting to drive the car to College Station, the speedometer, odometer, air conditioner, and heater were all inoperable. After getting the car to College Station, Upshaw replaced electrical fuses in the car and the electrical issues seemed to be fixed. However, the check engine light

11

immediately came on. Subsequently, the Mustang quit running and the car was eventually towed. Upshaw's motion for summary judgment alleges that he subsequently had the vehicle examined by a mechanic and there were significant mechanical problems with the car. However, the summary judgment evidence does not provide any evidence that supports this allegation.

In addition to the summary judgment evidence recited above, Upshaw included the requests for admissions that had been served upon Webb. The record reflects that Webb never answered the requests for admissions and, therefore, the requests are deemed admitted. *See* TEX. R. CIV P. 198.2(C); *Marino v. King,* 355 S.W.3d 629, 630 (Tex. 2011) (per curiam). The admissions made several specific inquiries of Webb. Webb admitted that he sold the Mustang to Upshaw, thereby proving that Upshaw was a consumer. Further, Webb admitted he did not allow Upshaw to drive the vehicle when Upshaw first looked at it, providing circumstantial proof regarding what Webb knew of the condition of the Mustang. Webb additionally admitted that he represented that the Mustang was in good working condition. Finally, Webb admitted that he made representations regarding the quality of the Mustang with knowledge as to the Mustang's actual condition.

Webb contends that the evidence is legally insufficient to prove the allegations of violation of section 17.46(b)(5) for a number of different reasons. We will address these in turn. First, Webb contends that Upshaw's affidavit was conclusory. As to the question of liability, the conclusory statement referred to is, "The only way that a dealer could get the radio to work was to also show that the car[']s [c]heck [e]ngine light was on which would discourage any buyer from purchasing the car." While it is true that

12

affidavits containing unsubstantiated factual or legal conclusions are not competent summary judgment proof, the question in this case remains whether there is any factual basis for Upshaw's conclusion. *See Mirales v. Morman,* No. 03-09-00451-CV, 2010 Tex. App. LEXIS 6347, at *23 (Tex. App.—Austin Aug. 6, 2010, no pet.) (mem. op.) (citing *Rizkallah v. Conner,* 952 S.W.2d 580, 586–88 (Tex. App.—Houston [1st Dist.] 1997, no writ)). Earlier in his affidavit, Upshaw stated that "when he first saw the Mustang it was situated in the center of several other cars and completely blocked in." He further stated, "I was not allowed to test drive the vehicle because [Webb] did not want to move the other cars unless I decided to purchase the vehicle." This recitation of facts provides support for the conclusion that the car was parked in this manner so as not to be easily accessible for starting or driving. The affidavit previously recited the factual pattern of changing the fuses out and the radio and other electronics started working and the check engine light immediately came on. Thus, we have a factual conclusion that is supported by other evidence in the summary judgment record. *See Rizkallah,* 952 S.W.2d at 587-88. As such, it is a proper conclusion. *See id.* When added with the admission that Upshaw was not allowed to drive the Mustang on the day Upshaw first visited Webb's business, the elements of the DTPA action under section 17.46(b)(5) have been established as a matter of law.

Webb also posits that nothing in the summary judgment proof establishes that Webb made any false statements to Upshaw. Again, we turn to the summary judgment proof. First, Webb's admission establishes that Webb represented that the Mustang was in good working condition. Next, the admission establishes that Webb was aware of the true condition of the Mustang when he sold it. Finally, the affidavit of Upshaw

establishes that he was told that the Mustang had not been involved in any wrecks and had no problems other than minor cosmetic dings. This affidavit then went through the litany of matters that arose after the Mustang was taken from the car lot, specifically, inoperable radio, air conditioner, and heater. The affidavit then recites that the changing of the fuses resulted in the immediate lighting of the check engine light. None of these defects were told to Upshaw and, in fact, a general assurance that the Mustang was in good working condition was represented to Upshaw. Webb assured Upshaw, not only was the car in working condition, but also the Mustang was in great driving condition. That false and inaccurate representations were made to Upshaw is conclusively established by the summary judgment proof. Having decided that the trial court did not err in granting the summary judgment in favor of Upshaw on the basis of his section 17.46(b)(5) cause of action, we need not address the remaining two laundry list causes of action. *See* TEX. R. APP. P. 47.1.

Finally, Webb posits that nothing in the summary judgment proof establishes that Webb knew he was making false statements. Such a position has been rejected by the Texas Supreme Court in the case of *Miller v. Keyser,* 90 S.W.3d 712, 716 (Tex. 2002). There, the appellant argued that he should not be held liable because he did not, in fact, know that his representations were false. *Id.* The court held that a consumer is required to show that the misrepresentation was false and that the false misrepresentation was the producing cause of the consumer's damages. *Id.* The court then stated that "[a] consumer is not required to prove intent to make a misrepresentation under the DTPA." *Id.* We, therefore, overrule appellant's contention that the summary judgment pursuant to Upshaw's claims under section 17.46(b) was

improperly granted. We will address Webb's issue regarding the producing cause of Upshaw's damages in the damages portion of this opinion.

Turning to Upshaw's section 17.50(a)(3) unconscionability cause of action, we find that, in order to succeed, Upshaw had the burden of establishing that Webb took advantage of his lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated. *See* § 17.50(a)(3); *Johnson v. MHSB Enters., L.L.C.,* No. 03-04-00153-CV, 2004 Tex. App. LEXIS 8900, at *18–19 (Tex. App.—Austin Oct. 7, 2004, pet. denied) (mem. op.) (citing *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 677 (Tex. 1998)). In reviewing the facts to ascertain whether Upshaw has met his burden proof on the issue of unconscionability, we are reminded that we must review all of the facts in the transaction. *See Johnson*, 2004 Tex. App. LEXIS 8900, at *19.

A review of Webb's brief does not reflect an issue or allegation that seems to be directly aimed at Upshaw's unconscionability cause of action. Rather, Webb seems to attack the trial court's finding regarding unconscionability via an argument about lack of knowledge or intent to knowingly give false information. If this is the intent of the brief, it fails because, as stated above, a consumer is not required to prove intent to make a representation under the DTPA. *See Miller,* 90 S.W.3d at 716. Turning specifically to an allegation of a violation of section 17.50(a)(3), the Texas Supreme Court has held that, in applying the concepts of the DTPA to an action under this section, we apply the objective standard referred to above and that scienter is irrelevant. *Bradford v. Vento,* 48 S.W.3d 749, 760 (Tex. 2001). Accordingly, to the extent Webb's brief can be viewed as attacking the unconscionability cause of action, the same is overruled and the

15

summary judgment is affirmed. Having sustained the trial court's grant of summary judgment on the issue of liability, we will next turn to the issue of damages.[4]

Damages

We begin our review of this subject by setting forth what the trial court found in its final judgment. The trial court ordered that Webb pay to Upshaw the sum of $10,950 as actual damages. There are no calculations given by the trial court. The summary judgment proof establishes that Upshaw's affidavit stated that the Mustang in the condition represented would have a value of $4,987. He further stated that he did not have the vehicle. According to the affidavit, this is so because the Mustang, while inoperable, was towed and he was unable to redeem the car. Thus, according to the summary judgment proof, the vehicle was sold for storage charges.

In establishing economic damages for violations of the DTPA, Upshaw could recover all actual damages that are recoverable at common law. *See Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 816 (Tex. 1997). Under common law, direct damages for misrepresentation are measured as either out-of-pocket damages, meaning the difference between the value the buyer paid and the value of what he received, or benefit-of-the-bargain damages, measured as the difference between the value represented and the value received. *See id.* at 817.

---

[4] Before we do so, however, we pause to note that our conclusion regarding the issues concerning liability under the DTPA also implicates the matter of the trial court's award of attorney's fees. Under the DTPA, an award of attorney's fees is mandatory to a prevailing consumer. *See* TEX. BUS. & COM. CODE ANN. § 17.50(d) (West 2011); *Manon v. Tejas Toyota, Inc.*, 162 S.W.3d 743, 751 (Tex. App.— Houston [14th Dist.] 2005, no pet.).

Inasmuch as we have concluded that Upshaw is a prevailing consumer under the DTPA, we also conclude that the trial court properly awarded him attorney's fees. Webb has not challenged the reasonableness of the attorney's fees on appeal, and we need not address such.

We know that Upshaw paid $3,000 for the Mustang, with a balance of $200 owing to Webb. The $3,000 is the value he was awarded for his trade-in. Further, Upshaw's affidavit places the value of the Mustang as represented at $4,987. This is his testimony as the property owner as to value. *See Reid Road Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.,* 337 S.W.3d 846, 849 (Tex. 2011) (holding that a property owner familiar with his property can testify about the actual value of the property as opposed to any intrinsic value). The problem arises when we try to take the figures properly before the trial court and establish how the trial court arrived at its damages figure. Even if we assume, *arguendo,* that Upshaw's economic damage was a total loss of the vehicle, $4,987, we still have not arrived at the damage award of $10,950. We have no testimony about the value of the Mustang in the condition it was actually in. We are asked to speculate as to that value. This we cannot do, for the burden in a summary judgment is upon the movant to prove all elements as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 848. Thus, Upshaw's summary judgment proof fails on the basic question of economic damages regarding the value of the Mustang in the condition it was sold. *See Arthur Andersen & Co.,* 945 S.W.2d at 817.

However, even were we to accept the total loss value of $4,987 for the Mustang, we still are not able to sustain the damages as found by the trial court. The only other testimony regarding damages was that contained in Upshaw's affidavit regarding cost of leasing a replacement vehicle: "The cost of me leasing a vehicle in the meantime would have been at least $20/day." Upshaw then averred that his damages for loss of use through January 15, 2014, is $14,320, representing 716 days. The problem with this

17

evidence is that it is pure speculation put before the trial court without any foundation about the actual cost of renting or leasing a vehicle or how we arrived at 716 days. All we have is Upshaw's factual conclusion without any other evidence in the record to support that conclusion. *See Rizkallah,* 952 S.W.2d at 587. This is simply a conclusory statement which is no evidence at all for purposes of the summary judgment. *See* TEX. R. CIV. P. 166a(c); *Eberstein v. Hunter*, 260 S.W.3d 626, 630 (Tex. App.—Dallas 2008 no pet.) (citing *Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 122 (Tex. 1996) (per curiam)).

The same is true of the last affidavit testimony of Upshaw regarding economic damages. In that statement, Upshaw averred that he was forced to leave school, did not have a vehicle, and had to leave behind his property, a loss of approximately $1,500. Again, we have no facts upon which to base this approximation by Upshaw. *See Rizkallah,* 952 S.W.2d at 587. And, again, this is nothing more than conclusory testimony and will not support the summary judgment. *See* TEX. R. CIV. P. 166a(c); *Eberstein*, 260 S.W.3d at 630.

Because we find that the evidence in support of the trial court's awarding of damages is insufficient to support the damages awarded, we will reverse the trial court's damage award and sustain Webb's challenge to that portion of the judgment entered. Also, the trial court's order trebling damages must also fail because we have found the evidence on economic damages insufficient.

Conclusion

We affirm the trial court's decision on liability under the DTPA cause of action but reverse the trial court's judgment in regards to the economic damages suffered by Upshaw and remand the matter to the trial court for a trial on the economic damages suffered by Upshaw.


Mackey K. Hancock
Justice